# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRIME PROPERTY & CASUALTY INSURANCE INC., <br><br> Plaintiff, <br> v. <br><br> FREIGHTWAY LOGISTICS LLC, SAM XIE, OSCAR HUAN, JACINTO BARRERA a.k.a. JACINTO ZEAS-BARRERA, CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, ABC INSURANCE COMPANIES 1-20 (names being fictitious and unknown), and ELLEN BARZDA, EXECUTOR OF THE ESTATE OF RAVEN BARZDA <br><br> Defendants. | CIVIL ACTION NO.: <br><br><br><br> COMPLAINT FOR DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §§ 2201 AND 2202, THE FEDERAL DECLARATORY JUDGMENT ACT |

Plaintiff, Prime Property & Casualty Insurance Inc. ("Prime"), by and through its attorneys KENNEDYS CMK, LLP, as and for its complaint for declaratory judgment, alleges:

## NATURE OF THIS ACTION

1. This action seeks judgment declaring all parties' rights and obligations under certain policies of liability insurance by reason of a certain motor vehicle collision believed to have occurred on February 21, 2018 in Hampton, New Jersey.

## THE PARTIES

2. Prime is a business corporation incorporated under the laws of the State of Illinois with its principal place of business in Sandy, Utah.

3. Defendant Freightway Logistics, LLC ("Freightway") is a limited liability company believed to have been organized under the laws of the State of New Jersey. Freightway's registered office is believed to be located at 245 Central Avenue, Kearny, New

Jersey, and its principal place of business is believed to be located at 123 Route 440 South, Jersey City, NJ 07002.

4.   Defendant Sam Xie is believed to be an employee of Freightway and to reside in the State of New Jersey.

5.   Defendant Oscar Huan is believed to be the "president" and sole member of Freightway, a limited liability company. Mr. Huan is believed to reside in the State of New York.

6.   Defendant Jacinto Barrera, a.k.a. Jacinto Zeas Barrera, is believed to reside in the State of New Jersey. Mr. Barrera is named as a defendant as he is believed to be "interested" in the judgments and relief sought by Prime in the within action.

7.   Ellen Barzda is believed to be the executrix of the Estate of Raven J. Barzda. Ms. Barzda is believed to reside in the State of New Jersey. She is named as a party defendant, in her representative capacity as executrix of the Estate of Raven J. Barzda, in that such estate is believed to be a party that is "interested" in the judgments and relief sought by Prime in the within action.

8.   Defendant Certain Underwriters at Lloyd's, London ("Underwriters") is believed to be a syndicate of insurance underwriters whose principal place of business is located in London, England. Underwriters is believed to have issued policies of insurance to policyholders in the State of New Jersey, and to have otherwise transacted business in the State of New Jersey.

9.   Defendants ABC Insurance Companies 1-20 are the fictitious names of insurance companies that issued insurance policies to Freightway, which policies may afford insurance coverage for the claims, causes of action and damages that have been or may be sought by the Barzda Estate.

**JURISDICTION & VENUE**

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1332(a)(1).

11. There is complete diversity as between Prime, the plaintiff, and all defendants, which or who are citizens of states other than Utah or Illinois.

12. The amount in controversy is expected to exceed $75,000 exclusive of interest and costs.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

14. This Court has personal jurisdiction over each defendant because each defendant resides in and/or conducts business within the State of New Jersey.

15. An actual and justiciable controversy exists between the parties with respect to the rights of the parties under certain policies of liability insurance and under related agreements.

**FACTUAL ALLEGATIONS**

**A.    The Policy**

16. On or about November 30, 2017, Freightway applied to Prime for a policy of commercial motor vehicle insurance. Included with Freightway's application was a list of ten individuals whom Freightway wished to have scheduled on the policy as drivers, and a list identifying over twenty vehicles Freightway wished to have included in the policy as scheduled vehicles, such that the vehicles would be covered under the policy to be issued.

17. On or about December 5, 2017, Prime issued an "Indication Quote" for a policy of commercial motor vehicle insurance. The Indication Quote identified several "Conditions" to which a policy of commercial motor vehicle insurance would be subject, including that "[o]nly

scheduled drivers are covered on the policy" and that "[o]nly owned or operated scheduled vehicles are covered on the policy."

18.  Freightway accepted the terms and conditions described by the Indication Quote, such that, on or about December 14, 2017, Prime issued policy number PC 1712806 ("the Policy," Exhibit A).

19.  The first page of the Policy, under the heading, "Declarations," states:

> THIS COMMERCIAL AUTO INSURANCE POLICY (the "Policy") is strictly limited to those activities and operations defined herein. Coverage is provided only for scheduled autos and drivers.

20.  The Policy contains a "Scheduled Drivers Endorsement," ACA-99-03, which identifies ten individuals as scheduled drivers and states:

> New drivers and operators will not be added to this Policy until the Insured provides in writing the driver's name, date of birth, and driver's license number to the Insurer. Acceptance by the Insurer is subject to underwriting approval and may require additional premium.

21.  The Policy states that Prime "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"

22.  Policy form ACA-99-04, "Specifically Described Autos – Item Three of the Declarations," identifies 22 motor vehicles that are "covered autos" under the Policy.

23.  The Policy contains an MCS-90 Endorsement, which states in relevant part:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of … . the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy … . It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein

described, irrespective of the financial condition, insolvency or bankruptcy of the insured. …

24. The Policy's MCS-90 Endorsement also states:

The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

### B. Indemnity Agreements and Personal Guarantees

25. On or about December 13, 2017, Freightway, in consideration of Prime's issuance of the Policy, signed and agreed to "The Loss Adjustment and Collateral Agreement as to Contingent Risks" ("the Loss Adjustment Agreement," Exhibit B). The Loss Adjustment Agreement states in relevant part that "[Freightway] agrees to indemnify, defend and hold [Prime] harmless with respect to any and all accidents, losses or claims of whatever kind, occurring or arising during the term of the Policy, to the extent of any payment made by [Prime] on account of a Non-Covered Claim."

26. In relevant part, the Loss Adjustment Agreement states that "…to the fullest extent provided by law, all claims as to non-scheduled drivers or autos will qualify as Non-Covered Claims for purposes of this agreement."

27. Paragraph 1**. Indemnity**, of the Loss Adjustment Agreement states in relevant part:

The Insured agrees to indemnify, defend and hold [Prime] harmless with respect to any and all accidents, losses or claims of whatever kind, occurring or arising during the term of the Policy, to the extent of any payment made by [Prime] on account of a Non-Covered Claim.

28. Paragraph 7 of the Loss Adjustment Agreement, which is titled "Insured's obligations if PPCI elects to defend, investigate or settle a Non-Covered Claim, or is required to pay a Non-Covered Claim," states in relevant part:

5

> If PPCI elects, at its sole option and discretion, to defend, investigate or settle a Non-Covered Claim, the Insured agrees to fully cooperate with PPCI in regard to that defense.
> The Insured further agrees to promptly reimburse PPCI for:
>
> a. All costs and attorneys' fees that PPXI incurs to defend the insured or any insured on the Policy as to such a claim or lawsuit;
>
> b. Reasonable loss adjustment expenses to cover PPCI's overhead costs to handle and defend such a claim or lawsuit, consisting of all of the costs and attorneys' fees that PPCI incurs to defend any insured in such a claim or lawsuit;
>
> c. All amounts PPCI pays in settlement or to indemnify the Insured or any Insured in regard to any Non-Covered Claim.
>
> d. All costs and attorneys' fees that PPCI may incur in its sole discretion to seek a defense or indemnity for any insured from any other insurer, including any other insurer that may have issued a policy of insurance constituting Non-Scheduled Driver's insurance or Non-Scheduled Auto Insurance.
>
> e. At the Insurer's option, all premiums due, whether retroactively, prospectively or both, including premiums due for unscheduled drivers or for unscheduled vehicles being operated by or on behalf of the Insured.

29. The section of the Loss Adjustment Agreement titled, "Personal guarantee and authority to sign for the Insured," states in relevant part:

> In addition, the undersigned, in his or her individual capacity, personally undertakes the financial obligations set forth in this Agreement in the event the Insured refuses or fails to indemnify and hold PPCI harmless as set forth above. The undersigned agrees and acknowledges that his or her personal guarantee shall continue even if the Insured is sold, transferred or dissolved or if the Insured shall become bankrupt or insolvent.

30. The Loss Adjustment Agreement was signed by Sam Xie on behalf of Freightway on December 13, 2017.

31. Mr. Xie signed the Loss Adjustment Agreement as an authorized representative of Freightway and signed the personal guarantee portion of the LAC Agreement as an agent of, on behalf of, and/or for the benefit of Freightway's principal owner, Oscar Huang.

32. On or about December 13, 2017, Freightway, as part of its application for insurance coverage, completed a "Coverage Request Form" (Exhibit C) and "Personal Guarantee and Indemnity Agreement" (Exhibit D).

33. The Coverage Request Form states in relevant part:

**Special Conditions to Bind**

Personal Guarantee Form must be signed by the principal owner and/or officer of the business and must be notarized.

34. The Coverage Request Form was signed by Sam Xie on behalf of Freightway and by an individual (whose signature is illegible) on behalf of BlueRock Insurance Services, as "broker," on December 13, 2017, and was provided to Prime. Prime relied on the information in the Coverage Request Form in evaluating Freightway's application for insurance coverage.

35. The Personal Guarantee and Indemnity Agreement states in relevant part:

I hereby agree to personally indemnify and hold the Insurer harmless from any and all costs, attorneys' fees, expenses, settlement proceeds or other funds expended or deemed owing as a result of the following:

*************************

(2) Any claim involving a vehicle which was not properly scheduled on the Policy for which claim the Insurer is nonetheless required to make any payment as a result of any federal or state financial responsibility filing including without limitation, any MCS-90, Form E or similar undertaking.

(3) Any claim involving a driver who was not properly scheduled on the Policy for which claim the Insurer is nonetheless required to make any payment as a result of any federal or state financial responsibility filing including without limitation, any MCS-90, Form E or similar undertaking.

7

36. The Personal Guarantee and Indemnity Agreement was signed on behalf of Freightway, as "Insured," and by Sam Xie as "Owner," on December 13, 2017 before a notary.

37. Mr. Xie signed the Personal Guarantee and Indemnity Agreement with the permission and authority of, and as an agent for and on behalf of Oscar Huang, the owner of Freightway.

38. The completed and signed Personal Guarantee and Indemnity Agreement was provided to Prime, which relied on the information therein in evaluating Freightway's application for insurance coverage.

**C.      The Barrera Tractor Trailer**

39. Mr. Barrera is the record owner of a certain Peterbilt-brand tractor.

40. Mr. Barrera also owns a trailer suitable for hauling freight. Mr. Barrera's tractor and trailer are collectively referred to as "the Barrera tractor trailer."

41. Mr. Barrera and Freightway are believed to have signed a certain "Lease Agreement" (Exhibit E) on or about January 22, 2018.

42. In the Lease Agreement, Mr. Barrera agreed to provide a "tractor and/or trailer, and all other equipment incident to his performing hauling services under this contract." The Lease Agreement further states that Mr. Barrera would "commit such tractor, trailer and equipment to the exclusive use of [Freightway], as needed for the duration of the lease."

43. Freightway did not, until after the occurrence of the motor vehicle collision that is the subject of this declaratory judgment action, inform Prime that it had entered into the Lease Agreement with Mr. Barrera, or that the Barrera tractor trailer was available to transport freight and would be carrying freight on behalf of Freightway.

44. Freightway did not, prior to the motor vehicle collision that is the subject of this complaint, request that Prime add Mr. Barrera to the Policy's schedule of "Scheduled Drivers," or to add the Barrera tractor trailer to the Policy as a "covered auto."

**D.**     **The Motor Vehicle Collision**

45. Prime is informed that at or about 5:08 p.m. on February 21, 2018 in Hampton, New Jersey, Raven Barzda was operating a motorcycle that collided with the Barrera tractor trailer.

46. Mr. Barrera was operating the Barrera tractor trailer at the time of the collision.

47. Ms. Barzda is believed to have died as a result of injuries sustained in the collision.

48. Mr. Barrera was not a scheduled driver, and his tractor-trailer was not a scheduled vehicle, on the Policy as of the date and time of the collision.

**E.**     **Freightway, Before Reporting the Collision to Prime, Tries to Add Mr. Barrera and His Vehicle to the Policy**

49. At or about 7:06 p.m. on February 21, 2018 (*i.e.* on the day of the collision, but about two hours after the occurrence of the collision), Blue Rock Insurance Services, which was Freightway's insurance broker, sent an email (Exhibit F) to Prime requesting that Mr. Barrera be added to the Policy as a "scheduled driver," and that the Barrera tractor trailer be added to the Policy as a "covered auto."  The email attached an ACORD "Commercial Policy Change Request" form (Exhibit G) and requested that Mr. Barrera be added to the Policy as a "scheduled driver," and that the Barrera tractor trailer be added to the Policy as a "covered auto," effective February 20, 2018 (that is, the day **before** the collision).

50. Neither Freightway nor Blue Rock informed Prime that Mr. Barrera, while operating the Barrera tractor trailer, had been involved in a motor vehicle collision resulting in a fatality.

9

51. Without knowledge that the collision involving Mr. Barrera and his tractor trailer had occurred, Prime issued a General Change Endorsement that added Mr. Barrera as a "scheduled driver," and the Barrera tractor trailer as a "covered auto," effective February 27, 2018 (that is, **6 days after** the collision).

### F.     Freightway Reports The Collision To Prime

52. On February 22, 2018, the day **after** the collision, Blue Rock submitted an "ACORD Automobile Loss Notice" form (Exhibit H) to Claims Direct Access, which is Prime's authorized representative for claims-handling. The ACORD form identifies the VIN number of the Barrera tractor involved in the collision, but does not identify Mr. Barrera as the driver or owner of the tractor, even though the ACORD form asks for this information.

53. On or about April 19, 2018, Prime received a letter from an attorney representing Ms. Barzda's estate that informed Prime of the Estate's claims against Freightway and Mr. Barrera.

54. On or about April 30, 2018, Prime received another letter from the attorney representing the Barzda Estate, which letter informed Prime that Mr. Barrera maintained a "Non-Trucking Liability" insurance policy "with Continental Insurance Agency, Inc. maintained with Certain Underwriters at Lloyds."

55. On May 22, 2018, Prime sent letters to Freightway and the attorney for the Barzda Estate, informing both that Prime was investigating the matter and was reserving the right to (1) deny coverage on the ground that neither Mr. Barrera nor the Barrera Tractor Trailer were scheduled on the Policy and (2) seek reimbursement from Freightway for any payment that Prime might make under the Policy.

**G.     Other Insurance**

56.    Prime is informed that Underwriters issued certain policies of liability insurance numbers Z158311-006NTL and Z168324-004APD to Jacinto Barrera, which policies may afford coverage to Mr. Barrera and/or Freightway for the Barzda Estate's claims.

57.    Defendants, ABC Insurance Companies 1-20 are the fictitious names of insurance companies, underwriting syndicates, or other business entities that issued policies of liability insurance that afford insurance to Mr. Barrera and Freightway for the Barzda Estate's claims.

## COUNT I

### (For judgment declaring that the Policy does not afford coverage to Mr. Barrera or Freightway for the Barzda Estate's claims)

58.    Prime repeats and re-alleges each and every allegation set forth in paragraphs 1 through 57 with the same force and effect as if fully set forth herein.

59.    Mr. Barrera was not a "scheduled driver" under the Policy at the time of the collision.

60.    The Barrera tractor trailer was not a "covered auto" under the Policy at the time of the collision.

61.    Accordingly, the Policy does not afford coverage to Freightway or Mr. Barrera for the Barzda Estate's claims, such that Prime is not obligated under the Policy to defend or indemnify either from the Barzda Estate's claims, causes of action and claimed damages.

**WHEREFORE**, Prime demands judgment as follows:

(a)    Declaring that the Policy does not afford liability insurance coverage to Freightway or Mr. Barrera for the Barzda Estate's claims;

(b)    Declaring that Prime owes no duty under the Policy to defend Mr. Barrera or Freightway from the Barzda Estate's claims, or to indemnify Mr. Barrera and Freightway from any judgment that may be entered in favor of the Barzda Estate against them;

(c)        For damages, interest, attorney fees and costs of suit; and

(d)        For such other and further relief as the Court deems equitable and just.

## COUNT II
### (For Judgment declaring what duty Underwriters and ABC Insurance Companies 1-20 owe to defend and/or indemnify Mr. Barrera and Freightway from the Barzda Estate's claims)

62. Prime repeats and re-alleges each and every allegation set forth in paragraphs 1 through 61 with the same force and effect as if fully set forth herein.

63. Defendants, Certain Underwriters at Lloyd's of London and ABC Insurance Companies 1-20 issued certain policies of liability policies that obligate some or all of them to defend and/or indemnify Mr. Barrera and Freightway for and from the Barzda Estate's claims.

64. Prime is informed, and on that basis alleges, that Mr. Barrera has been advised by Certain Underwriters at Lloyd's of London or its representatives that these policies of liability policies will not afford insurance coverage to Mr. Barrera or Freightway for and from the Barzda Estate's claims.

**WHEREFORE**, Prime demands judgment:

(a)        Declaring that Certain Underwriters at Lloyd's, London, and ABC Insurance Companies 1-20 owe duties under their respective policies to defend Mr. Barrera and/or Freightway from the Barzda Estate's claims and to indemnify Mr. Barrera and Freightway from any judgment that may be entered in favor of the Barzda Estate;

(b)        For damages, interest, attorney fees and costs of suit; and

(c)        For such other and further relief as the Court deems equitable and just.

### COUNT III
**(Judgment declaring that Prime owes no duty under the MCS-90 Endorsement to pay any judgment recovered by the Barzda Estate against Freightway and/or Barrera for liability resulting from negligence in the operation, maintenance or use of the Barrera tractor trailer)**

65. Prime repeats and re-alleges each and every allegation set forth in paragraphs 1 through 64 with the same force and effect as if fully set forth herein.

66. Prime owes no duty to indemnify Mr. Barrera under the MCS-90 Endorsement from any final judgment entered in favor of the Barzda Estate against him because he was not, at the time of the collision, a scheduled driver under the Policy.

67. If Mr. Barrera was not operating the Barrera tractor trailer in interstate commerce at the time of the collision, Prime will owe no duty to indemnify Freightway from any final judgment entered in favor of the Barzda Estate against it.

68. If there is other valid and collectible insurance that will afford coverage to Freightway for and from claims of the Barzda Estate, Prime will not be liable under the MCS-90 Endorsement.

**WHEREFORE**, Prime demands judgment in its favor and against all defendants as follows:

(a) Declaring that Prime owes no duty to indemnify Mr. Barrera under the MCS-90 Endorsement from any final judgment entered in favor of the Barzda Estate against him;

(b) Declaring that Prime owes no duty to indemnify Freightway under the MCS-90 Endorsement from any final judgment entered in favor of the Barzda Estate against it;

(b) For damages, interest, attorney fees and costs of suit; and

(c) For such other and further relief as the Court deems equitable and just.

## COUNT IV
**(Judgment declaring that Freightway, Mr. Xie, and Mr. Huan are obligated under the MCS-90 Endorsement, the Loss Adjustment Agreement, and the Personal Guarantee and Indemnity Agreement to indemnify and hold Prime harmless from costs, attorneys' fees, expenses, settlement proceeds or other funds expended or deemed owing by reason of the collision)**

69. Prime repeats and re-alleges each and every allegation set forth in paragraphs 1 through 68.

70. Freightway is obligated under the MCS-90 endorsement to reimburse Prime "…for any payment made by the company on account of any accident, claim, or suit involving breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement."

71. The "Personal Guarantee and Indemnity Agreement" (Exhibit D) states in relevant part:

> I hereby agree to personally indemnify and hold the Insurer harmless from any and all costs, attorneys' fees, expenses, settlement proceeds or other funds expended or deemed owing as a result of the following:
>
> (2) Any claim involving a vehicle which was not properly scheduled on the Policy for which claim the Insurer is nonetheless required to make any payment as a result of any federal or state financial responsibility filing including without limitation, any MCS-90, Form E or similar undertaking.
>
> (3) Any claim involving a driver who was not properly scheduled on the Policy for which claim the Insurer is nonetheless required to make any payment as a result of any federal or state financial responsibility filing including without limitation, any MCS-90, Form E or similar undertaking.

72. The Personal Guarantee and Indemnity Agreement was signed by Sam Xie on December 13, 2017 with the authority of, and on behalf of, the "principal owner" of Freightway, Oscar Huang.

73. The Loss Adjustment Agreement (Exhibit B) states in relevant part that "[Freightway] agrees to indemnify, defend and hold [Prime] harmless with respect to any and all accidents, losses or claims of whatever kind, occurring or arising during the term of the Policy, to the extent of any payment made by [Prime] on account of a Non-Covered Claim."

74. Paragraph 7 of the Loss Adjustment Agreement, which is titled "Insured's obligations if PPCI elects to defend, investigate or settle a Non-Covered Claim, or is required to pay a Non-Covered Claim," states in relevant part:

> If PPCI elects, at its sole option and discretion, to defend, investigate or settle a Non-Covered Claim, the Insured agrees to fully cooperate with PPCI in regard to that defense. The Insured further agrees to promptly reimburse PPCI for:
>
> a. All costs and attorneys' fees that PPXI incurs to defend the insured or any insured on the Policy as to such a claim or lawsuit;
>
> b. Reasonable loss adjustment expenses to cover PPCI's overhead costs to handle and defend such a claim or lawsuit, consisting of all of the costs and attorneys' fees that PPCI incurs to defend any insured in such a claim or lawsuit;
>
> c. All amounts PPCI pays in settlement or to indemnify the Insured or any Insured in regard to any Non-Covered Claim.
>
> d. All costs and attorneys' fees that PPCI may incur in its sole discretion to seek a defense or indemnity for any insured from any other insurer, including any other insurer that may have issued a policy of insurance constituting Non-Scheduled Driver's insurance or Non-Scheduled Auto Insurance.
>
> e. At the Insurer's option, all premiums due, whether retroactively, prospectively or both, including premiums due for unscheduled drivers or for unscheduled vehicles being operated by or on behalf of the Insured.

75. The section of the Loss Adjustment Agreement captioned, "Personal guarantee and authority to sign for the Insured," states in relevant part:

> In addition, the undersigned, in his or her individual capacity, personally undertakes the financial obligations set forth in this Agreement in the event the Insured refuses or fails to indemnify and hold PPCI harmless as set forth above. The undersigned agrees and acknowledges that his or her personal guarantee shall continue even if

the Insured is sold, transferred or dissolved or if the Insured shall become bankrupt or insolvent.

76. The Loss Adjustment Agreement was signed by Sam Xie on December 13, 2017 with the authority of, and on the behalf of, the "principal owner" of Freightway, Oscar Huang.

77. Freightway, Xie and Huang are obligated by the Personal Guarantee Form and the Loss Adjustment Agreement to indemnify Prime from any and all costs, attorneys' fees, expenses, settlement proceeds or other funds expended or deemed owing by reason of the collision between the late Ms. Barzda's motorcycle and the Barrera tractor-trailer, which was not scheduled under the Policy; and by reason of the operation of the Barrera tractor-trailer by Barrera, who was not a scheduled driver under the Policy.

**WHEREFORE**, Prime demands judgment against defendants Freightway, Xie and Huan as follows:

(a) For full and complete indemnification from any and all costs, attorneys' fees, expenses, settlement proceeds or other funds expended or deemed owing by reason of the collision between the late Ms. Barzda's motorcycle and the Barrera tractor-trailer, and by reason of the operation of the Barrera tractor-trailer by Barrera;

(b) For damages, interest, attorneys' fees and costs of suit; and

(c) For such other and further relief as the Court deems equitable and just.

KENNEDYS CMK LLP
Attorneys for Plaintiff
Prime Property & Casualty Insurance Inc.

*/s/ David M. Kupfer*
David M. Kupfer
Eduardo DeMarco
KENNEDYS CMK LLP
120 Mountain View Boulevard
P.O. Box 650
Basking Ridge, New Jersey 07920
(908) 848-6300

Dated: November 5, 2018