# EXHIBIT A



# Prime Property & Casualty Insurance Inc.
## Declarations
### Page 1 of 2

---

**THIS COMMERCIAL AUTO INSURANCE POLICY (the "Policy") is strictly limited to those activities and operations defined herein. Coverage is provided only for scheduled autos and drivers.**

| **Policy Number:** PC1712806 | **Customer Number:** D17-212051 |
|---|---|

**Policy Period:** From Effective Date:   12/14/2017   To Expiration Date:   12/14/2018   Retroac ive Date:   12/14/2017
(All dates (12:01 a.m.) of the physical address of the Insured.)

**Name and Physical Address of the Insured:**
Freightway Logistics LLC
123 Route 440 South
Jersey City, NJ 07002

**Mailing Address:**
1443 70th St
Brooklyn, NY 11228

---

**Policy Premium:**

Premium:

Insurer Inspection/Policy Fee:

**Total:**

---

**25 % Premium Earned at Inception**

---

**Description of coverage afforded hereunder:**   Commercial Auto - NJ

---

**Endorsements and forms afforded to this policy:**   ACA-99-03, ACA-99-04, CA 00 01 10 13, IL 00 17 11 98, CA 23 84 10 13, IL 00 21 09 08, CA 03 02 10 13, CA 01 84 11 16, CA 02 04 04 11, CA 01 88 10 13, IL 01 41 09 08,  IL 02 08 09 07, MCS-90, CA23981013, CA21141016, CA21771013, CA22301116, PCA-99-26, PCA-99-10

---

**Producer:**
   **Bluerock Insurance Services Inc**
   47-12 30th Ave
   Astoria, NY 11103

---

**Issuing Office:**
   **Prime Property & Casualty Insurance Inc.**
   8722 S. Harrison St.
   Sandy, UT 84070                    Phone: 800-257-5590

---

**Address Notice of Claims/Complaints to:**
   **Claims Direct Access (CDA)**
   8722 S. Harrison St.
   Sandy, UT 84070

---

**Service of Suit may be made upon :**
   **Jeffery P. Leman**
   8722 S. Harrison St.
   Sandy, UT 84070

---



# Prime Property & Casualty Insurance Inc.
## Declarations
### Page 2 of 2

| **Business Auto:** | | | **Line Premium:** | |
|---|---|---|---|---|
| $1,000,000 | Combined Single Limit (CSL) | | $15,000 | UM Per Person |
| $5,000 | Liability Deductible | | $30,000 | UM Per Accident |
| | | | $5,000 | UM Property Damage |
| | | | $250,000 | Pedestrian PIP |
| Number of Vehicles: 10 | | Number of Drivers: 10 | | |
| Item 2: 7 | | | | |

**Coverages:**
Hired Auto - Scheduled Auto
Non-Owned Auto - Scheduled Driver

---

**Trailer Interchange:**                                                                 **Line Premium:**
Trailer Interchange   Units:   10   Value:   $40,000
Deductible:   $2,500

---

**Issuing Date:**   2/13/2018

**Authorized Representative**

# SCHEDULED DRIVERS ENDORSEMENT

## ACA-99-03

| | |
|---|---|
| CARRIER: | Prime Property  Casualty Insurance Inc. |
| | 8722 South Harrison St. |
| | Sandy, UT 84070. |
| POLICY NUMBER | PC1712806 |
| INSURED NAME AND ADDRESS | Freightway Logistics LLC |
| | 123 Route 440 South |
| | Jersey City, NJ 07002 |

**This Endorsement changes the terms and conditions of the Policy issued.  Please read it carefully!**

The Insured hereby warrants that each and every person scheduled on this Policy below is over the age of 21 and under the age of 65, unless otherwise authorized by an underwriter and scheduled on the Policy.

New drivers and operators will not be added to this Policy until the Insured provides in writing the driver's name, date of birth, and driver's license number to the Insurer.  Acceptance by the Insurer is subject to underwriting approval and may require additional premium.

### Named Driver or Operator Listing

| No. | Name | D.O.B. | License Number | State | Notes |
|---|---|---|---|---|---|
| 1 | Hector Paulino | | | NJ | |
| 2 | Davinder Singh | | | NJ | |
| 3 | Oscar Urena | | | NJ | |
| 4 | Gilberto Peralta | | | NJ | |
| 5 | Edwin Cuartas | | | NJ | |
| 6 | FRAULIO CORRO | | | NJ | |
| 7 | FRANCISCO TAMAYO | | | NJ | |
| 8 | JIMMY RUIZ | | | NJ | |
| 9 | YOVANNY CASTRO | | | NJ | |
| 10 | VERNON GOURDET | | | NJ | |

**SPECIFICALLY DESCRIBED AUTOS – ITEM THREE OF THE DECLARATIONS**

**ACA-99-04**

| Unit No. | Year | Make | Model | Vehicle Identification Number (VIN) | Medallion | Garage City, State | Radius | Liability | Value | Effective Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2009 | Volvo | Tractor | 4V4NC9TH39N280083 | None | Jersey City, NJ | Unlimited | ☑ | $0.00 | 12/14/2017 |
| 2 | 2002 | Kenworth | Tractor | 1XKTD49X32J884798 | None | Jersey City, NJ | Unlimited | ☑ | $0.00 | 12/14/2017 |
| 3 | 2000 | Freightliner | Tractor | 1FUPCDZB0YLF06046 | None | Jersey City, NJ | Unlimited | ☑ | $0.00 | 12/14/2017 |
| 4 | 2011 | Freightliner | Tractor | 1FJUJGLDR2BSAS049 | None | Jersey City, NJ | Unlimited | ☑ | $0.00 | 12/14/2017 |
| 5 | 2000 | Peterbilt | Tractor | 1XP5DB9X5YN53069 | None | Jersey City, NJ | Unlimited | ☑ | $0.00 | 12/14/2017 |
| 6 | 2013 | Kenworth | Tractor | 1XKAD49x6dj319715 | None | Jersey City, NJ | Unlimited | ☑ | $0.00 | 12/14/2017 |
| 7 | 2000 | Freightliner | Tractor | 1FUYDXYB6YLF70614 | None | Jersey City, NJ | Unlimited | ☑ | $0.00 | 12/14/2017 |
| 8 | 2013 | Kenworth | Tractor | 1XKAD49X7DJ315981 | None | Jersey City, NJ | Unlimited | ☑ | $0.00 | 12/14/2017 |
| 9 | 2005 | Volvo | Tractor | EV4NC9TJ35N394355 | None | Jersey City, NJ | Unlimited | ☑ | $0.00 | 12/14/2017 |
| 10 | 2012 | Kenworth | Tractor | 1XKAD49x4cj308727 | None | Jersey City, NJ | Unlimited | ☑ | $0.00 | 12/14/2017 |
| 11 | 2017 | Non-Owned | Trailer | | None | Jersey City, NJ | Unlimited | ☑ | $40,000.00 | 12/14/2018 |
| 12 | 2017 | Non-Owned | Trailer | | None | Jersey City, NJ | Unlimited | ☑ | $40,000.00 | 12/14/2017 |
| 13 | 2017 | Non-Owned | Trailer | | None | Jersey City, NJ | Unlimited | ☑ | $40,000.00 | 12/14/2017 |
| 14 | 2017 | Non-Owned | Trailer | | None | Jersey City, NJ | Unlimited | ☑ | $40,000.00 | 12/24/2018 |
| 15 | 2017 | Non-Owned | Trailer | | None | Jersey City, NJ | Unlimited | ☑ | $40,000.00 | 12/24/2018 |
| 16 | 2017 | Non-Owned | Trailer | | None | Jersey City, NJ | Unlimited | ☑ | $40,000.00 | 12/14/2017 |
| 17 | 2017 | Non-Owned | Trailer | | None | Jersey City, NJ | Unlimited | ☑ | $40,000.00 | 12/14/2018 |
| 18 | 2017 | Non-Owned | Trailer | | None | Jersey City, NJ | Unlimited | ☑ | $40,000.00 | 12/14/2017 |
| 19 | 2017 | Non-Owned | Trailer | | None | Jersey City, NJ | Unlimited | ☑ | $40,000.00 | 12/14/2017 |
| 20 | 2017 | Non-Owned | Trailer | | None | Jersey City, NJ | Unlimited | ☑ | $40,000.00 | 12/14/2017 |
| 21 | 2017 | Hired | Auto | | None | Jersey City, NJ | Unlimited | ☑ | $0.00 | 12/14/2017 |
| 22 | 2017 | Non-Owned | Auto | | None | Jersey City, NJ | Unlimited | ☑ | $0.00 | 12/14/2017 |

ACA-99-04 13DEC2012                                                                                                           Page 1 of 2

## SPECIFICALLY DESCRIBED AUTOS – ITEM THREE OF THE DECLARATIONS

### ACA-99-04

| Unit No. | Year | Make | Model | Vehicle Identification Number (VIN) | Medallion | Garage City, State | Radius | Liability | Value | Effective Date |
|----------|------|------|-------|-------------------------------------|-----------|--------------------|--------|-----------|-------|----------------|

All Autos are required to pass an annual safety inspection performed by an independent service garage in order to be a covered Auto, which must be available at the request of the Insurer.

Any non-owned trailers scheduled on this endorsement must be attached to a scheduled power unit for coverage to apply.

**COMMERCIAL AUTO**
**CA 00 01 10 13**



**PRIME**
**PROPERTY & CASUALTY**
**INSURANCE INC.**

# BUSINESS AUTO COVERAGE FORM

**A Capital Stock Company**                                    **Chicago, Illinois  60606**

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |

## B. Owned Autos You Acquire After The Policy Begins

1. If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

## C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

## SECTION II – COVERED AUTOS LIABILITY COVERAGE

### A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

#### 1. Who Is An Insured

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   (1) The owner or anyone else from whom you hire or borrow a covered "auto".

   This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

### 2. Coverage Extensions

#### a. Supplementary Payments

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

#### b. Out-of-state Coverage Extensions

While a covered "auto" is away from the state where it is licensed, we will:

**(1)** Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

### B. Exclusions

This insurance does not apply to any of the following:

#### 1. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

#### 2. Contractual

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

#### 3. Workers' Compensation

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

### 4. Employee Indemnification And Employer's Liability

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

### 5. Fellow Employee

"Bodily injury" to:

a. Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

b. The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph a. above.

### 6. Care, Custody Or Control

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

### 7. Handling Of Property

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

### 8. Movement Of Property By Mechanical Device

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

### 9. Operations

"Bodily injury" or "property damage" arising out of the operation of:

a. Any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment"; or

b. Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

### 10. Completed Operations

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph a. or b. above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed;

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

### 11. Pollution

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

### 12. War

"Bodily injury" or "property damage" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

### 13. Racing

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

### C. Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

 © Insurance Services Office, Inc., 2011

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   a. **Comprehensive Coverage**

      From any cause except:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

   b. **Specified Causes Of Loss Coverage**

      Caused by:

      (1) Fire, lightning or explosion;

      (2) Theft;

      (3) Windstorm, hail or earthquake;

      (4) Flood;

      (5) Mischief or vandalism; or

      (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   c. **Collision Coverage**

      Caused by:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   a. **Transportation Expenses**

      We will pay up to $20 per day, to a maximum of $600, for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   b. **Loss Of Use Expenses**

      For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

      (1) Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

      (2) Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

© Insurance Services Office, Inc., 2011

**(3)** Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

## B. Exclusions

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

### a. Nuclear Hazard

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

### b. War Or Military Action

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" due and confined to:

**a.** Wear and tear, freezing, mechanical or electrical breakdown.

**b.** Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

**5.** Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

**a.** Permanently installed in or upon the covered "auto";

**b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

**c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

**d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

**6.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

## C. Limits Of Insurance

**1.** The most we will pay for:

**a.** "Loss" to any one covered "auto" is the lesser of:

**(1)** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**(2)** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**b.** All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

**(1)** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

© Insurance Services Office, Inc., 2011

(2) Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

(3) An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

### D. Deductible

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

### SECTION IV – BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### A. Loss Conditions

#### 1. Appraisal For Physical Damage Loss

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

#### 2. Duties In The Event Of Accident, Claim, Suit Or Loss

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

(4) Authorize us to obtain medical records or other pertinent information.

(5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is "loss" to a covered "auto" or its equipment, you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

#### 3. Legal Action Against Us

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option, we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

(1) Excess while it is connected to a motor vehicle you do not own; or

(2) Primary while it is connected to a covered "auto" you own.

b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

© Insurance Services Office, Inc., 2011

## 7. Policy Period, Coverage Territory

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

(1) The United States of America;

(2) The territories and possessions of the United States of America;

(3) Puerto Rico;

(4) Canada; and

(5) Anywhere in the world if a covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

## 8. Two Or More Coverage Forms Or Policies Issued By Us

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V – DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means:

1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

 © Insurance Services Office, Inc., 2011

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

- **(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

- **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

- **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

- **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

- **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

- **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

- **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

© Insurance Services Office, Inc., 2011 **CA 00 01 10 13**

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers; or

6. Vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. "Property damage" means damage to or loss of use of tangible property.

N. "Suit" means a civil proceeding in which:

   1. Damages because of "bodily injury" or "property damage"; or

   2. A "covered pollution cost or expense";

   to which this insurance applies, are alleged.

   "Suit" includes:

      a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

      b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

O. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

P. "Trailer" includes semitrailer.

© Insurance Services Office, Inc., 2011

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL AUTO
CA 23 84 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, is enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

    a. That involve the following or preparation for the following:

        (1) Use or threat of force or violence; or

        (2) Commission or threat of a dangerous act; or

        (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and

    b. When one or both of the following apply:

        (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

        (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined under this Coverage Form, Policy or any applicable endorsement.

B. Except with respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

## Exclusion Of Terrorism

We will not pay for "any injury, damage, loss or expense" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, damage, loss or expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

© Insurance Services Office, Inc., 2013

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

**5.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**6.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    **a.** Physical injury that involves a substantial risk of death; or

    **b.** Protracted and obvious physical disfigurement; or

    **c.** Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **B.5.** and **B.6.** are exceeded.

With respect to this exclusion, Paragraphs **B.5.** and **B.6.** describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**C.** With respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

### Exclusion Of Terrorism

We will not pay for any "loss", loss of use or rental reimbursement after "loss" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

**5.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold in Paragraph **C.5.** is exceeded.

 © Insurance Services Office, Inc., 2013

With respect to this exclusion, Paragraph **C.5.** describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**D.** In the event of any incident of "terrorism" that is not subject to the exclusion in Paragraph **B.** or **C.,** coverage does not apply to "any injury, damage, loss or expense" that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

© Insurance Services Office, Inc., 2013

IL 00 21 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

(Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007 □

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

POLICY NUMBER:

**COMMERCIAL AUTO**
**CA 03 02 10 13**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

**Named Insured:**

**Endorsement Effective Date:**

### SCHEDULE

Covered Autos Liability Coverage and Paragraph **A.** Bodily Injury And Property Damage Liability of Section **II** – General Liability Coverages in the Auto Dealers Coverage Form are subject to one of the following two deductibles shown below:

| Liability Deductible: | $ | Per "Accident" |
|---|---|---|
| | **OR** | |
| "Property Damage" Only Liability Deductible: | $ | Per "Accident" |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

### A. Liability Deductible

If a Liability Deductible, and not a "Property Damage" Only Liability Deductible, is shown in the Schedule, the damages resulting from any one "accident" that are otherwise payable will be reduced by the Liability Deductible shown in the Schedule prior to the application of the Limit of Insurance provision.

### B. Property Damage Only Liability Deductible

If a "Property Damage" Only Liability Deductible, and not a Liability Deductible, is shown in the Schedule, the damages resulting from any one "accident" that are otherwise payable for "property damage" will be reduced by the "Property Damage" Only Liability Deductible shown in the Schedule prior to the application of the Limit of Insurance provision.

### C. Our Right To Reimbursement

To settle any claim or "suit", we will pay all or any part of any deductible shown in the Schedule. You must reimburse us for the deductible or the part of the deductible we paid.

COMMERCIAL AUTO
CA 01 84 11 16

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW JERSEY CHANGES –
# PHYSICAL DAMAGE INSPECTION

For a covered "private passenger auto" licensed or principally garaged in New Jersey, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The following provisions are added to **Physical Damage Coverage** and apply in place of any conflicting policy provision:

## A. Changes In Physical Damage Coverage

### Mandatory Inspection For Physical Damage Coverage

1. We have the right to inspect any "private passenger auto", including a non-owned "private passenger auto", insured or intended to be insured under this Coverage Form, before Physical Damage Coverage shall be effective.

2. During the term of the Policy, coverage for an additional or replacement "private passenger auto" shall not become effective until the "insured" notifies us and requests coverage for the "private passenger auto". However, if the "insured" replaces a "private passenger auto" insured with us for at least 12 months before the replacement date with a "private passenger auto" acquired during the policy period, we will provide the same coverage which applied to the replaced "private passenger auto" for three days beginning on the date the "insured" acquires the replacement "private passenger auto". We will also provide an additional day of coverage for each Saturday, Sunday or New Jersey state holiday falling within the three days. After three days, coverage will not apply until the "insured" notifies us and requests coverage for the "private passenger auto".

3. When an inspection is required by us, the "insured" shall cooperate and make the "private passenger auto" available for the inspection.

## B. Changes In Definitions

As used in this endorsement:

1. "Occupying" means in, upon, getting in, on, out or off.

2. "Private passenger auto" means:

   a. A private passenger "auto" of a private passenger or station wagon type that is owned or hired and is neither:

      (1) Used as a public or livery conveyance for passengers including, but not limited to, any period of time an "auto" is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the "auto"; nor

      (2) Rented to others with a driver; and

   b. A motor vehicle with a pickup body, a delivery sedan, a van, or a panel truck or camper-type vehicle used for recreational purposes owned by an individual or by husband and wife who are residents of the same household, not customarily used in the occupation, profession or business of the "insured" other than farming or ranching. An "auto" owned by a farm family co-partnership or corporation, which is principally garaged on a farm or ranch and otherwise meets the definitions contained in this section, shall be considered a private passenger auto owned by two or more relatives resident in the same household.

 © Insurance Services Office, Inc., 2016

3. "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

COMMERCIAL AUTO
CA 02 04 04 11

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW JERSEY CHANGES – CANCELLATION FOR OVERSIZED VEHICLES

This endorsement modifies insurance provided under the following:

NEW JERSEY CHANGES – CANCELLATION AND NONRENEWAL

The following is added to **E. Cancellation** Common Policy Condition:

We will send notice to the Motor Vehicle Commission 10 days before the effective date of cancellation of insurance for any "auto" subject to and in excess of statutory weight limitations and permit requirements.

 © Insurance Services Office, Inc., 2010  o

COMMERCIAL AUTO
CA 01 88 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW JERSEY CHANGES

For a covered "auto" licensed or principally garaged in New Jersey, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Changes In Covered Autos Liability Coverage

1. Paragraph **1.b.(4)** of the **Who Is An Insured** provision is replaced by the following:

   (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

   However, this paragraph does not apply for coverage up to the minimum financial responsibility limits specified in N.J.S.A. 39:6B-1.

2. Exclusion **11. Pollution** is amended by the addition of the following:

   This exclusion does not apply for coverage up to the minimum financial responsibility limits specified in N.J.S.A. 39:6B-1.

## B. Changes In Conditions

The following is added to the **Loss Payment – Physical Damages Coverages** Condition:

If we pay the amount necessary to repair the stolen or damaged property, you have the option to use either:

a. An "auto" repair facility with whom we have an arrangement; or

b. An "auto" repair facility of your choice;

in any repairs to the "auto".

If you choose to use an "auto" repair facility other than an "auto" repair facility with whom we have an arrangement, we will pay you in accordance with the terms and conditions, including price, provided by the "auto" repair facility with whom we have an arrangement.

IL 01 41 09 08

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW JERSEY CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under New Jersey law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

1. Individual Named Insured by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of such Named Insured's household, including a ward or foster child; or

2. Individual named in the Schedule by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of your household, including a ward or foster child.

© Insurance Services Office, Inc., 2008

IL 02 08 09 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW JERSEY CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Pursuant to New Jersey law, this policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the insured. The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew this policy are maintained by the insurer in writing and will be furnished to the insured and/or the insured's lawful representative upon written request.

This provision shall not apply to any policy which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the policy is a renewal policy.

**B.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

  **2.** If this policy has been in effect for less than 60 days, we may cancel this policy for any reason subject to the following:

   **a.** We may cancel this policy by mailing or delivering to the first Named Insured and any person entitled to notice under this policy written notice, of cancellation, at least:

    **(1)** 10 days before the effective date of cancellation if we cancel for:

     **(a)** Nonpayment of premium; or

  **(b)** Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f) as follows:

   **(i)** "The risk, danger or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. Any change in the circumstances of an insured that will increase the probability of such a destruction may be considered a 'moral hazard'"; and

   **(ii)** "The substantial risk, danger or probability that the character, circumstances or personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible. Any change in the character or circumstances of an individual, corporate, partnership or other insured that will increase the probability of such a loss or liability may be considered a 'moral hazard'".

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b.** In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation.

**C.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation Of Policies In Effect For 60 Days Or More**

**a.** If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f);

**(3)** Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk;

**(4)** Increased hazard or material change in the risk assumed which we could not have reasonably contemplated at the time of assumption of the risk;

**(5)** Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

**(6)** Lack of cooperation from the insured on loss control matters materially affecting insurability of the risk;

**(7)** Fraudulent acts against us by the insured or its representative that materially affect the nature of the risk insured;

**(8)** Loss of or reduction in available insurance capacity;

**(9)** Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal;

**(10)** Loss of or substantial changes in applicable reinsurance;

**(11)** Failure by the insured to comply with any Federal, State or local fire, health, safety or building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within 60 days of written notification of a violation of any such law, regulation or ordinance;

**(12)** Failure by the insured to provide reasonable and necessary underwriting information to us upon written request therefore and a reasonable opportunity to respond.

**(13)** Agency termination, provided:

**(a)** We document that replacement coverage at comparable rates and terms has been provided to the first Named Insured, and we have informed the first Named Insured, in writing, of the right to continue coverage with us; or

**(b)** We have informed the first Named Insured, in writing, of the right to continue coverage with us and the first Named Insured has agreed, in writing, to the cancellation or nonrenewal based on the termination of the first Named Insured's appointed agent.

**(14)** Any other reasons in accordance with our underwriting guidelines for cancellation of commercial lines coverage.

**b.** If we cancel this policy based on Paragraph **7.a.(1)** or **(2)** above, we will mail or deliver a written notice, to the first Named Insured and any person entitled to notice under this policy, at least 10 days before the effective date of cancellation. If we cancel this policy for any other reason listed above, we will mail or deliver a written notice to the first Named Insured and any person entitled to notice under this policy, not more than 120 days nor less than 30 days before the effective date of such cancellation.

**c.** In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation. For cancellation due to the nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date set forth in the notice.

**d.** Notice will be sent to the last mailing addresses known to us, by:

**(1)** Certified mail; or

**(2)** First class mail, if we have obtained from the post office a date stamped proof of mailing showing names and addresses.

© ISO Properties, Inc., 2006

e. We need not send notice of cancellation if you have:

(1) Replaced coverage elsewhere; or

(2) Specifically requested termination.

D. The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. We may elect not to renew this policy for any reason permitted to cancel it. If we elect not to renew this policy, we will mail a notice of non-renewal, stating the reasons for nonrenewal, to the first Named Insured at least 30 days but not more than 120 days before the expiration date of this policy. If this policy does not have a fixed expiration date, it shall be deemed to ex-pire annually on the anniversary of its incep-tion.

2. This notice will be sent to the first Named In-sured at the last mailing address known to us by:

a. Certified mail; or

b. First class mail, if we have obtained from the post office a date stamped proof of mailing showing the first Named Insured's name and address.

3. We need not mail or deliver this notice if you have:

a. Replaced coverage elsewhere; or

b. Specifically requested termination.

# CLAIMS WARRANTY AND COVERAGE STATEMENT

## ACA-99-12

Coverage provided under the Policy is contingent on the following warranty, requirements, and acknowledgements as evidenced by the Applicant's signature.

### WARRANTY STATEMENT

The "Applicant" is the party to be named as the "Insured" in any insuring contract if issued. By signing this statement, the Applicant for insurance hereby represents and warrants that the information provided in the Application, together with all supplemental information and documents provided in conjunction with the Application, is true, correct, inclusive of all relevant and material information necessary for the Insurer to accurately and completely assess the Application, and is not misleading in any way. The Applicant further represents that the Applicant understands and agrees as follows: (i) the Insurer can and will rely upon the Application and supplemental information provided by the Applicant, and any other relevant information, to assess the Applicant's request for insurance coverage and to quote and potentially bind, price, and provide coverage; (ii) all supplemental information and documents provided in conjunction with the Application are warranties that may become a part of any coverage contract that may be issued; (iii) the submission of an Application or the payment of any premium does not obligate the Insurer to quote, bind, or provide insurance coverage; and (iv) in the event the Applicant has or does provide any false, misleading, or incomplete information in conjunction with the Application, any coverage provided will be deemed void from initial issuance. The Applicant hereby authorizes the Insurer and its agents to gather any additional information the Insurer deems necessary to process the Application for quoting, binding, pricing, and providing insurance coverage including, but not limited to, gathering information from federal, state, and industry regulatory authorities, insurers, creditors, customers, financial institutions, and credit reporting agencies.

### FUTURE CLAIM INCIDENT/REPORTING REQUIREMENT

As an express condition precedent to coverage under this Policy, you must give us immediate written notice no later than 72 hours after any incident, event, occurrence, loss, or Accident which might give rise to a Claim covered by this Policy. Written notice must be given to: Claims Direct Access, P.O. Box 4439, Sandy, Utah 84091-4439, U.S.A. Phone: (077) 505-2849 or (801) 304-5530; Fax: (877) 452-6909 or (801) 304-5538.

### ACKNOWLEDGEMENT OF RESTRICTIVE COVERAGES

Coverage is provided only for otherwise covered Claims which result form an Accident occurring during the Policy Period. In addition, coverage is strictly limited to those activities and operations and at those locations listed, described, and defined in the Policy. Please read the Policy and all Endorsements carefully to determine your rights and duties and what is and is not covered.

The Applicant expressly understands, acknowledges, and agrees that (i) a one-time $250 policy fee will be assessed at policy inception. This policy fee is fully; accordingly, no refund will be made regardless of whether the Policy is cancelled by the covered party or the Insurer for any reason, (ii) a $50 additional charge will be added for any Additional Insured; (iii) a $10 service fee will be charged for every driver change; (iv) a flat charge will be assessed for Driver Surcharge(s) and MVR Surcharge(s); (v) a $25 charge may be charged to reinstate any policy canceled for nonpayment of premium; (vi) a $5 fee will be added to each monthly payment if the Applicant elects a payment plan.

### NOTICE OF TERRORISM INSURANCE COVERAGES

You are hereby notified that under the Terrorism Risk Insurance Act as extended on December 22, 2005, (the "Act"), that you now have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act. The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States- to be an act of terrorism; to be a violent act or an act that is dangerous to human life; property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Exclusions for acts of terrorism apply only if the act(s) of terrorism result(s) in industry-wide insured losses that exceed $25,000,000 for related incidents that occur within a 72-hour period, or fifty or more persons sustain death or serious physical injury for related incidents that occur within a 72-hour period. For purposes of this provision, "serious physical injury" means: (i) physical injury that involves a substantial risk of death; (ii) protracted and obvious physical disfigurement; or (iii) protracted loss of or impairment of the function of a bodily member or organ. Exclusions for acts of terrorism are not subject to the limitations above if: (i) the act involves the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination; (ii) the act is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or (iii) pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

Coverage under your Policy may be affected as follows:

## (YOU MUST MAKE A SELECTION)

| | |
|---|---|
| ☐ | I hereby elect to purchase coverage, subject to the limitations of the Act, for acts of terrorism, as defined in the Act, for 20% increase in premium, if accepted. |
| ☒ | I hereby decline coverage for terrorism. I understand that I will have no coverage for losses resulting from acts of terrorism. |

All other terms and conditions of this Policy remain unchanged.

Applicant's Signature/Date                12/13/17                Signature of Broker/Agent of Applicant/Date        12/13/17

Sam Xie

Print Applicant's Name                                             Print Broker/Agent Name   Blue Rock Ins. Services

ACA-99-12 15MAY2014

**FORM MCS-90**   Revised 01/05/2017                                    **OMB No.: 2126-0008   Expiration: 01/31/2020**

| **USDOT Number:** 2812473 | **Date Received:** |
| --- | --- |

A Federal Agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2126-0008. Public reporting for this collection of information is estimated to be approximately 2 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are mandatory. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Information Collection Clearance Officer, Federal Motor Carrier Safety Administration, MC-RRA, Washington, D.C. 20590.



United States Department of Transportation
**Federal Motor Carrier Safety Administration**

Endorsement for Motor Carrier Policies of Insurance for Public Liability
under Sections 29 and 30 of the Motor Carrier Act of 1980

# FORM MCS-90

**Issued to** Freightway Logistics LLC _____ **of** New Jersey _____
           *(Motor Carrier name)*                              *(Motor Carrier state or province)*

**Dated at** 12:00 noon ___ **on this** 14th ___ **day of** December ___ , 2017 ___

**Amending Policy Number:** PC1712806 _____ **Effective Date:** 12/14/2017 _____

**Name of Insurance Company:** Prime Property and Casualty Insurance _____

                              **Countersigned by:** _____
                                                    *(authorized company representative)*

The policy to which this endorsement is attached provides primary or excess insurance, as indicated for the limits shown *(check only one)*:

⦿ *This insurance is primary and the company shall not be liable for amounts in excess of $* 750,000.00 _____ *for each accident.*

◯ *This insurance is excess and the company shall not be liable for amounts in excess of $* _____ *for each accident in excess of the underlying limit of $* _____ *for each accident.*

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA, to verify that the policy is in force as of a particular date. The telephone number to call is: 800-257-5590 _____

Cancellation of this endorsement may be effected by the company of the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington, DC).

Filings must be transmitted online via the Internet at http://www.fmcsa.dot.gov/urs.

*(continued on next page)*

**FORM MCS-90 Page 1 of 3**

FORM MCS-90   Revised 01/05/2017

OMB No.: 2126-0008   Expiration: 01/31/2020

# DEFINITIONS AS USED IN THIS ENDORSEMENT

*Accident* includes continuous or repeated exposure to conditions or which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

*Motor Vehicle* means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

*Bodily Injury* means injury to the body, sickness, or disease to any person, including death resulting from any of these.

*Property Damage* means damage to or loss of use of tangible property.

*Environmental Restoration* means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

*Public Liability* means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon,

or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

(continued on next page)

FORM MCS-90   Revised 01/05/2017                                      OMB No.: 2126-0008   Expiration: 01/31/2020

## SCHEDULE OF LIMITS — PUBLIC LIABILITY

| Type of carriage | Commodity transported | January 1, 1985 |
|---|---|---|
| (1) For-hire (in interstate or foreign commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Property (nonhazardous) | $750,000 |
| (2) For-hire and Private (in interstate, foreign, or intrastate commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials, Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material, as defined in 49 CFR 173.403. | $5,000,000 |
| (3) For-hire and Private (in interstate or foreign commerce, in any quantity; or in intrastate commerce, in bulk only; with a gross vehicle weight rating of 10,000 or more pounds). | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials, and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | $1,000,000 |
| (4) For-hire and Private (In interstate or foreign commerce, with a gross vehicle weight rating of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2, or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 |

*The schedule of limits shown does not provide coverage. The limits shown in the schedule are for information purposes only.

POLICY NUMBER:

COMMERCIAL AUTO
CA 23 98 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TRAILER INTERCHANGE COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: |
| Endorsement Effective Date: |

**SCHEDULE**

| Coverages | Limit Of Insurance And Deductible | Estimated Premium |
|---|---|---|
| Comprehensive | Least Of Actual Cash Value, Cost Of Repair, Or | $ |
| | $              Limit Of Insurance | |
| | $              Deductible For Each Covered Trailer | |
| Specified Causes Of Loss | Least Of Actual Cash Value, Cost Of Repair, Or | $ |
| | $              Limit Of Insurance | |
| | $              Deductible For Each Covered Trailer | |
| Collision | Least Of Actual Cash Value, Cost Of Repair, Or | $ |
| | $              Limit Of Insurance | |
| | $              Deductible For Each Covered Trailer | |
| Fire | Least Of Actual Cash Value, Cost Of Repair, Or | $ |
| | $              Limit Of Insurance | |
| | $              Deductible For Each Covered Trailer | |
| Fire And Theft | Least Of Actual Cash Value, Cost Of Repair, Or | $ |
| | $              Limit Of Insurance | |
| | $              Deductible For Each Covered Trailer | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

© Insurance Services Office, Inc., 2011

This endorsement provides only the coverage for which a premium is shown in the Schedule.

**A. Coverage**

1. We will pay all sums you legally must pay as damages because of "loss" to a "trailer" you don't own or its equipment under.

   **a. Comprehensive Coverage**

   From any cause except.

   (1) The "trailer's" collision with another object; or

   (2) The "trailer's" overturn.

   **b. Specified Causes Of Loss Coverage**

   Caused by.

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the "trailer".

   **c. Collision Coverage**

   Caused by.

   (1) The "trailer's" collision with another object; or

   (2) The "trailer's" overturn.

   **d. Fire Coverage**

   Caused by:

   (1) Fire, lightning or explosion; or

   (2) The sinking, burning, collision or derailment of any conveyance transporting the "trailer".

   **e. Fire And Theft Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft; or

   (3) The sinking, burning, collision or derailment of any conveyance transporting the "trailer".

2. We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

3. **Coverage Extensions**

   The following applies as Supplementary Payments. We will pay for you:

   **a.** All expenses we incur.

   **b.** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance.

   **c.** All reasonable expenses incurred at our request, including actual loss of earnings up to $250 a day because of time off from work.

   **d.** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

   **e.** All interest on the full amount of any judgment that accrues after entry of the judgment; but our duty to pay interest ends when we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

   These payments will not reduce the Limit of Insurance.

**B. Exclusions**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   (1) The explosion of any weapon employing atomic fission or fusion or

   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War Or Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for loss of use

**3. Other Exclusions**

We will not pay for "loss" due and confined to.

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

This exclusion does not apply to "loss" resulting from the total theft of a covered "auto".

**C. Limit Of Insurance**

The most we will pay for "loss" to any one "trailer" is the least of the following amounts.

1. The actual cash value of the damaged or stolen property at the time of the "loss".

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

3. The Limit Of Insurance shown in the Declarations.

**D. Deductible**

For each covered "trailer", our obligation to pay.

1. The actual cash value of the damaged or stolen property as of the time of the "loss" will be reduced by the applicable deductible shown in the Declarations,

2. The cost of repairing or replacing the damaged or stolen property with property of like kind and quality will be reduced by the applicable deductible shown in the Declarations, or

3. The damages for "loss" that would otherwise be payable will be reduced by the applicable deductible shown in the Schedule prior to the application of the Limit Of Insurance shown in the Declarations.

**E. Additional Definitions**

As used in this endorsement:

"Trailer" includes a semitrailer or a dolly used to convert a semitrailer into a trailer. But for Trailer Interchange Coverage only, "trailer" also includes a container.

POLICY NUMBER:

**COMMERCIAL AUTO**
**CA 21 14 10 16**

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW JERSEY UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, New Jersey, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| Named Insured: |
| --- |
| **Endorsement Effective Date:** |

## SCHEDULE

| Limit Of Insurance:  $ | Each "Accident" |
| --- | --- |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

### A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured", or "property damage" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "uninsured motor vehicle" or an "underinsured motor vehicle".

2. With respect to damages resulting from an "accident" with an "underinsured motor vehicle", we will pay under this coverage only if Paragraph **a.** or **b.** below applies:

   a. The limit of any applicable liability bonds or policies has been exhausted by judgments or payments; or

   b. A tentative settlement has been made between an "insured" and the insurer of an "underinsured motor vehicle" and we:

      (1) Have been given prompt written notice of such tentative settlement; and

      (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

### B. Who Is An Insured

If the Named Insured is designated in the Schedule or Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

CA 21 14 10 16

© Insurance Services Office, Inc., 2016

Page 1 of 6

b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

c. The Named Insured for "property damage" only.

C. Exclusions

This insurance does not apply to any of the following:

1. With respect to an "uninsured motor vehicle", any claim settled without our consent.

2. Damages for pain, suffering and inconvenience resulting from "bodily injury" caused by an "accident" involving an "uninsured motor vehicle" or an "underinsured motor vehicle", unless the injured person has a legal right to recover damages for such pain, suffering and inconvenience under the New Jersey Automobile Reparation Reform Act. The injured person's legal right to recover damages for pain, suffering and inconvenience under the New Jersey Automobile Reparation Reform Act will be determined by the liability tort limitation, if any, applicable to that person.

3. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

4. The direct or indirect benefit of any insurer of property.

5. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

6. "Property damage" for which the "insured" has been or is entitled to be compensated by other property or physical damage insurance.

7. The first $500 of the amount of "property damage" to the property of each "insured" as the result of any one "accident".

8. "Property damage" caused by a hit-and-run vehicle.

9. Punitive or exemplary damages.

10. "Bodily injury" or "property damage" sustained by any "insured" who is an owner of a motor vehicle:

a. Insured under a basic automobile insurance policy issued in accordance with New Jersey law or regulation; or

b. Required to be insured in accordance with New Jersey law or regulation, but not insured for this coverage or any similar coverage.

However, this exclusion does not apply to an individual Named Insured, and such Named Insured's spouse, unless the individual Named Insured or such Named Insured's spouse is "occupying", at the time of an "accident", a motor vehicle described in Subparagraph a. or b. above.

11. "Bodily injury" or "property damage" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the Limit Of Insurance shown in the Schedule or Declarations for Uninsured Motorists Coverage and Underinsured Motorists Coverage is the most we will pay for all damages resulting from any one "accident" with an "uninsured motor vehicle" or an "underinsured motor vehicle".

a. However, subject to our maximum Limit of Insurance for this coverage, if:

(1) An "insured" is not the individual Named Insured under this Policy;

(2) That "insured" is an individual Named Insured under one or more other policies providing similar coverage; and

(3) All such other policies have a Limit of Insurance for similar coverage which is less than the Limit of Insurance for this coverage;

© Insurance Services Office, Inc., 2016

then the most we will pay for all damages resulting from any one "accident" with an "uninsured motor vehicle" or an "underinsured motor vehicle" shall not exceed the highest applicable Limit of Insurance under any Coverage Form or policy providing coverage to that "insured" as an individual Named Insured.

b. However, subject to our maximum Limit of Insurance for this coverage, if:

(1) An "insured" is not the individual Named Insured under this Policy or any other policy;

(2) That "insured" is insured as a "family member" under one or more other policies providing similar coverage; and

(3) All such other policies have a Limit of Insurance for similar coverage which is less than the Limit of Insurance for this coverage;

then the most we will pay for all damages resulting from any one "accident" with an "uninsured motor vehicle" or an "underinsured motor vehicle" shall not exceed the highest applicable Limit of Insurance under any Coverage Form or policy providing coverage to that "insured" as a "family member".

However, Paragraphs **D.1.a.** and **D.1.b.** do not apply to "employees" of a business or corporate entity designated in the Schedule or Declarations as a Named Insured.

2. With respect to damages resulting from an "accident" involving an "uninsured motor vehicle", we will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

3. With respect to damages resulting from an "accident" involving an "underinsured motor vehicle", the Limit of Insurance shall be reduced by all sums paid by or for anyone who may be legally responsible, including all sums paid under this Coverage Form's Covered Autos Liability Coverage.

4. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form attached to this Coverage Part.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any personal injury protection benefits.

**E. Changes In Conditions**

The Conditions are changed for Uninsured And Underinsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

However, if an "insured" is:

(1) An individual Named Insured under one or more policies providing similar coverage;

(2) Not "occupying" a vehicle owned by that individual Named Insured; and

(3) Not an "employee" of a business or corporate entity designated in the Schedule or Declarations as a Named Insured;

then any recovery for damages for "bodily injury" or "property damage" for that "insured" may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage to that "insured" as an individual Named Insured.

However, if an "insured" is:

(a) Insured as a "family member" under one or more policies providing similar coverage;

(b) Not an individual Named Insured under this or any other policy; and

(c) Not an "employee" of a business or corporate entity designated in the Schedule or Declarations as a Named Insured;

then any recovery for damages for "bodily injury" or "property damage" for that "insured" may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage to that "insured" as a "family member".

 © Insurance Services Office, Inc., 2016

**b.** Any insurance we provide with respect to a vehicle:

(1) The Named Insured does not own; or

(2) Owned by the Named Insured or, if the Named Insured is an individual, any "family member", that is not a covered "auto" for Uninsured And Underinsured Motorists Coverage under this Coverage Form,

shall be excess over any other collectible uninsured motorists or underinsured motorists insurance providing coverage on a primary basis.

**c.** If the coverage under this Coverage Form is provided:

(1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

(2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

**a.** Promptly notify the police if a hit-and-run driver or "stolen vehicle" is involved; and

**b.** Promptly send us copies of the legal papers if a "suit" is brought.

**c.** A person seeking coverage under this endorsement must also promptly notify us, in writing, of a tentative settlement between the "insured" and the insurer of an "underinsured motor vehicle", and allow us to advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

**3. Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights do not apply under this provision with respect to damages caused by an "accident" with an "underinsured motor vehicle" if we:

**a.** Have been given prompt notice, in writing, of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

**b.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

(1) That payment will be separate from any amount the "insured" is entitled to recover under the provisions of this endorsement; and

(2) We also have a right to recover the advanced payment.

**4.** The following condition is added:

**Arbitration**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

 © Insurance Services Office, Inc., 2016

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

### F. Additional Definitions

As used in this endorsement:

1. "Property damage" means damage to a covered "auto", or to any property of an "insured" while contained in a covered "auto".

2. "Family member" means a person related to an individual Named Insured by blood, marriage, or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

3. "Occupying" means in, upon, getting in, on, out or off.

4. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   **a.** For which no liability bond or policy applies at the time of an "accident";

   **b.** For which an insuring or bonding company denies coverage or is or becomes insolvent;

   **c.** That, with respect to damages for "bodily injury" only, is a hit-and-run vehicle whose operator or owner cannot be identified and that hits, or causes an "accident" resulting in "bodily injury" without hitting:

      (1) An individual Named Insured or any "family member";

      (2) A vehicle that the Named Insured or any "family member", if the Named Insured is an individual, is "occupying"; or

      (3) A covered "auto";

   **d.** For which the only available coverage is a special automobile policy, as defined by New Jersey law; or

   **e.** That is a "stolen vehicle".

   However, an "uninsured motor vehicle" does not include any vehicle:

      (1) Owned by or furnished or available for the regular use of the Named Insured or any "family member", except a "stolen vehicle", if the Named Insured is an individual;

      (2) Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

      (3) Owned by any governmental unit or agency;

      (4) Insured under a basic automobile insurance policy issued in accordance with New Jersey law or regulation;

      (5) Operated on rails or crawler treads;

      (6) Designed for use mainly off public roads while not on public roads; or

      (7) While located for use as a residence or premises.

5. "Underinsured motor vehicle" means the following:

   **a.** With respect to an "insured" who:

      (1) Is not the individual Named Insured under this Policy;

      (2) Is an individual Named Insured under one or more other policies providing similar coverage; and

      (3) Is not an "employee" of a business or corporate entity designated in the Schedule or Declarations as a Named Insured;

   "underinsured motor vehicle" means a land motor vehicle or "trailer" of any type to which a liability bond or policy applies at the time of an "accident", but its limit of liability is less than the highest applicable limit of liability under any Coverage Form or policy providing coverage to that "insured" as an individual Named Insured.

   **b.** With respect to an "insured" who:

      (1) Is not the individual Named Insured under this Policy or any other policy;

      (2) Is insured as a "family member" under one or more other policies providing similar coverage; and

      (3) Is not an "employee" of a business or corporate entity designated in the Schedule or Declarations as a Named Insured;

   "underinsured motor vehicle" means a land motor vehicle or "trailer" of any type to which a liability bond or policy applies at the time of an "accident", but its limit of liability is less than the highest applicable limit of liability under any Coverage Form or policy providing coverage to that "insured" as a "family member".

 © Insurance Services Office, Inc., 2016

**c.** With respect to any other "insured" who is not descr bed in Paragraph **a.** or **b.** above, "underinsured motor vehicle" means a land motor vehicle or "trailer" of any type to which a liability bond or policy applies at the time of an "accident", but its limit of liability is less than the Limit of Insurance for this coverage.

However, an "underinsured motor vehicle" does not include any vehicle:

(1) Owned or operated by a self-insurer under any applicable motor vehicle law;

(2) Owned by any governmental unit or agency;

(3) Operated on rails or crawler treads;

(4) Designed for use mainly off public roads while not on public roads;

(5) While located for use as a residence or premises; or

(6) Owned by or furnished or available for the regular use of the Named Insured or, if the Named Insured is an individual, any "family member".

**6.** "Stolen vehicle" means a vehicle that is a covered "auto" and, at the time of the "accident", the vehicle is operated by an unknown third person without the consent of the "insured".

© Insurance Services Office, Inc., 2016

CA 21 14 10 16

POLICY NUMBER:

**COMMERCIAL AUTO
CA 21 77 10 13**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW JERSEY SPLIT UNINSURED AND UNDERINSURED MOTORISTS COVERAGE LIMITS

This endorsement modifies insurance provided under the following:

NEW JERSEY UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: |
| --- |
| **Endorsement Effective Date:** |

**SCHEDULE**

| Limit Of Liability | | |
| --- | --- | --- |
| "Bodily Injury": | $ | Each Person |
| | $ | Each "Accident" |
| "Property Damage" | $ | Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

Paragraph **1.** of the **Limit Of Insurance** provision is replaced by the following:

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the limit of insurance is as follows:

   a. The most we will pay for all damages resulting from "bodily injury" to any one person caused by any one "accident", including all damages claimed by any person or organization for care, loss of services or death resulting from the "bodily injury", is the limit of "Bodily Injury" shown in the Schedule for each person.

   b. Subject to the limit for each person, the most we will pay for all damages resulting from "bodily injury" caused by any one "accident" is the limit of "Bodily Injury" shown in the Schedule for each "accident".

   c. If coverage for "property damage" is provided by this insurance, the most we will pay for all damages resulting from "property damage" caused by any one "accident" is the limit of "Property Damage" shown in the Schedule for each "accident".

 © Insurance Services Office, Inc., 2012

POLICY NUMBER:

**COMMERCIAL AUTO**
**CA 22 30 11 16**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW JERSEY PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, New Jersey, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

---

**Named Insured:**

**Endorsement Effective Date:**

---

**SCHEDULE**

| I. | **Extended Medical Expense Benefits** | | |
|---|---|---|---|
| | **Benefits** | **Limit Of Insurance** | |
| | **Medical Expenses** | $ | Per Person Per "Accident" |
| **II.** | **Medical Expense Benefits Deductible** | | |
| | Unless otherwise indicated to the left, medical expense benefits are subject to a deductible of $250 per "accident". | | |
| | When indicated to the left, medical expense benefits applicable to: | | |
| | **A.** The "named insured" and, if the "named insured" is an individual, any "family members" will be subject to a deductible of $ _____ per "accident" instead of the $250 deductible; and | | |
| | **B.** An "eligible injured person" other than the "named insured" and, if the "named insured" is an individual, any "family members" shall be subject to a separate deductible of $250 per "accident". | | |
| **III.** | **Medical Expense Benefits Copayment** | | |
| | Medical expense benefits are subject to a copayment of 20% per "accident" for amounts payable between the applicable deductible and $5,000. | | |
| **IV.** | **Deletion Of Benefits Other Than Medical Expenses Option** | | |
| ☒ | All Personal Injury Protection Benefits other than medical expense benefits are deleted with respect to the "named insured" and, if the "named insured" is an individual, any "family members", when indicated to the left. Refer to the Deletion Of Benefits Other Than Medical Expenses Provision. | | |
| **V.** | **Medical Expense Benefits-As-Secondary Option** | | |
| ☒ | If the "named insured" is an individual, medical expense benefits with respect to the "named insured" and "family members" are secondary to the health benefits plans under which the "named insured" and "family members" are insured, when indicated to the left. | | |

© Insurance Services Office, Inc., 2016

| VI. | Personal Injury Protection Coverage For Pedestrians | |
|---|---|---|
| | Coverage ONLY is provided for "private passenger automobiles" | Premium |
| | | $ |
| VII. | Pedestrian Personal Injury Protection | |
| | Coverage ONLY is provided for the following vehicles designed for use principally on public roads which are not "private passenger automobiles" and to which the liability coverage of this Coverage Form applies. | |
| | Description Of Vehicle | Premium |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## A. Coverages

### 1. Personal Injury Protection

We will pay Personal Injury Protection Benefits for "bodily injury" sustained by an "eligible injured person" caused by an "accident" occurring during the policy period and arising out of the ownership, maintenance or use, including loading or unloading, of a "private passenger auto" as an auto.

These Personal Injury Protection Benefits consist of:

#### a. Medical Expense Benefits

An amount not exceeding $250,000 per person per "accident" for reasonable and necessary expenses incurred for medical, surgical, rehabilitative and diagnostic treatments and services, hospital expenses, ambulance or transportation services, medication and nonmedical expenses that are prescribed by a treating "health care provider" for a permanent or significant brain, spinal cord or disfiguring injury.

Nonmedical expense means charges for products and devices, not exclusively used for medical purposes or as durable medical equipment, such as vehicles, durable goods, equipment, appurtenances, improvements to real or personal property, fixtures and services and activities such as recreational activities, trips and leisure activities.

All medical expenses must be rendered by a "health care provider", be "clinically supported" and consistent with the symptoms, diagnosis or indications of the "insured". They must also be consistent with the most appropriate level of service that is in accordance with the standards of good practice and standard professional treatment protocols, including care paths for an "identified injury". They must not be rendered primarily for the convenience of the "insured" or "health care provider" nor may they involve unnecessary testing or treatment.

However, medical expenses include any nonmedical remedial treatment rendered in accordance with recognized religious methods of healing.

#### b. Income Continuation Benefits

An amount not exceeding a limit of $100 per week and a total limit of $5,200 payable for the loss of income of an "income producer" during his or her lifetime, as a result of "bodily injury" disability, not to exceed net "income" normally earned during the period in which benefits are payable.

© Insurance Services Office, Inc., 2016

#### c. Essential Services Benefits

An amount not exceeding a limit of $12 per day and a total limit of $4,380 payable to an "eligible injured person" as reimbursement for payments made to others, for substitute essential services of the type actually rendered during his or her lifetime and which he or she would ordinarily have performed not for "income" but for the care and maintenance of himself or herself and persons related to the "eligible injured person" by blood, marriage or adoption (including a ward or foster child) who are residents of the same household as the "eligible injured person".

#### d. Death Benefits

The amount or amounts payable in the event of the death of an "eligible injured person" as determined below:

(1) If the "eligible injured person" was an "income producer" at the time of the "accident", an amount equal to the difference between $5,200 and all basic income continuation benefits paid for any loss of "income" resulting from his or her injury prior to his or her death; or

(2) If the "eligible injured person" ordinarily performed essential services for the care and maintenance of himself or herself, his or her family or family household, an amount equal to the difference between $4,380 and all basic essential services benefits paid with respect to his or her injury prior to death.

#### e. Funeral Expense Benefits

An amount not exceeding $1,000 for reasonable funeral, burial and cremation expenses incurred.

#### 2. Extended Medical Expense Benefits

We will pay Extended Medical Expense Benefits for "bodily injury" sustained by an "insured person" caused by an "accident" occurring during the policy period and arising out of the ownership, maintenance or use, including loading and unloading, of a "highway vehicle" not owned by or furnished or available for the regular use of the "named insured" or any "family member".

Subject to the limits shown in the Schedule or Declarations, Extended Medical Expense Benefits consist of the following:

Reasonable expenses incurred for medical, surgical, rehabilitative and diagnostic treatments and services, hospital expenses, ambulance or transportation services, medication and nonmedical expenses that are prescribed by a treating "health care provider" for a permanent or significant brain, spinal cord or disfiguring injury.

Nonmedical expense means charges for products and devices, not exclusively used for medical purposes or as durable medical equipment, such as vehicles, durable goods, equipment, appurtenances, improvements to real or personal property, fixtures and services and activities such as recreational activities, trips and leisure activities.

#### 3. Pedestrian Personal Injury Protection

This coverage applies to "pedestrians" and only to "accidents" which occur during the policy period in New Jersey. With respect to an "insured motor vehicle" as described for this coverage, Pedestrian Personal Injury Protection Coverage is the only Personal Injury Protection Coverage for that vehicle.

We will pay Pedestrian Personal Injury Protection Benefits to an "eligible injured person". These Pedestrian Personal Injury Protection Benefits consist of:

#### a. Medical Expense Benefits

An amount not exceeding $250,000 per person per "accident" for reasonable and necessary expenses incurred for medical, surgical, rehabilitative and diagnostic treatments and services, hospital expenses, ambulance or transportation services, medication and nonmedical expenses that are prescribed by a treating "health care provider" for a permanent or significant brain, spinal cord or disfiguring injury.

Nonmedical expense means charges for products and devices, not exclusively used for medical purposes or as durable medical equipment, such as vehicles, durable goods, equipment, appurtenances, improvements to real or personal property, fixtures and services and activities such as recreational activities, trips and leisure activities.

All medical expenses must be rendered by a "health care provider", be "clinically supported" and consistent with the symptoms, diagnosis or indications of the "insured". They must also be consistent with the most appropriate level of service that is in accordance with the standards of good practice and standard professional treatment protocols, including care paths for an "identified injury". They must not be rendered primarily for the convenience of the "insured" or "health care provider" nor may they involve unnecessary testing or treatment.

However, medical expenses include any nonmedical remedial treatment rendered in accordance with recognized religious methods of healing.

**b. Income Continuation Benefits**

An amount not exceeding a limit of $100 per week and a total limit of $5,200 payable for the loss of income of an "income producer" during his or her lifetime, as a result of "bodily injury" disability; not to exceed net "income" normally earned during the period in which benefits are payable.

**c. Essential Services Benefits**

An amount not exceeding a limit of $12 per day and a total limit of $4,380 payable to an "eligible injured person" as reimbursement for payments made to others, for substitute essential services of the type actually rendered during his or her lifetime and which he or she would ordinarily have performed not for "income" but for the care and maintenance of himself or herself and persons related to the "eligible injured person" by blood, marriage or adoption (including a ward or foster child) who are residents of the same household as the "eligible injured person".

**d. Death Benefits**

The amount or amounts payable in the event of the death of an "eligible injured person" as determined below:

(1) If the "eligible injured person" was an "income producer" at the time of the "accident", an amount equal to the difference between $5,200 and all basic income continuation benefits paid for any loss of "income" resulting from his or her injury prior to his or her death; or

(2) If the "eligible injured person" ordinarily performed essential services for the care and maintenance of himself or herself, his or her family or family household, an amount equal to the difference between $4,380 and all basic essential services benefits paid with respect to his or her injury prior to death.

**e. Funeral Expense Benefits**

An amount not exceeding $1,000 for reasonable funeral, burial and cremation expenses incurred.

All medical expenses must be rendered by a "health care provider", be "clinically supported" and consistent with the symptoms, diagnosis or indications of the "insured". They must also be consistent with the most appropriate level of service that is in accordance with the standards of good practice and standard professional treatment protocols, including care paths for an "identified injury". They must not be rendered primarily for the convenience of the "insured" or "health care provider" nor may they involve unnecessary testing or treatment.

However, medical expenses include any nonmedical remedial treatment rendered in accordance with recognized religious methods of healing.

**B. Exclusions**

**1. Personal Injury Protection**

We will not pay Personal Injury Protection Benefits for "bodily injury":

**a.** To a person whose conduct contributed to the "bodily injury" in any of the following ways:

(1) While committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer; or

(2) While acting with specific intent to cause injury or damage to himself or herself or others;

**b.** To any person who, at the time of the "accident", was the owner or registrant of a "private passenger auto" registered or principally garaged in New Jersey that was being operated without Personal Injury Protection Coverage;

© Insurance Services Office, Inc., 2016

c. To any person who is not occupying a covered "auto", other than the "named insured" or any "family member" or a resident of New Jersey, if the "accident" occurs outside of New Jersey;

d. Arising out of the ownership, maintenance or use, including loading or unloading, of any vehicle while located for use as a residence or premises other than for transitory recreational purposes;

e. Arising directly or indirectly out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these;

f. Resulting from the radioactive, toxic, explosive or other hazardous properties of nuclear material;

g. To any person, other than the "named insured" or any "family member", if such person is entitled to New Jersey Personal Injury Protection Coverage as a "named insured" or "family member" under the terms of any other policy with respect to such coverage;

h. To any "family member", if such person is entitled to New Jersey Personal Injury Protection Coverage as a "named insured" under the terms of another policy; or

i. To any person operating or occupying a "private passenger auto" without the permission of the owner or the "named insured" under the Policy insuring that "auto";

j. For the following "diagnostic tests":

(1) Brain mapping, when not done in conjunction with appropriate neurodiagnostic testing;

(2) Iridology;

(3) Mandibular tracking and simulation;

(4) Reflexology;

(5) Spinal diagnostic ultrasound;

(6) Surface electromyography (surface EMG);

(7) Surrogate arm mentoring; or

(8) Any other "diagnostic test" that is determined to be ineligible for coverage under Personal Injury Protection Coverage by New Jersey law or regulation;

k. For the following "diagnostic tests" when used to treat temporomandibular joint disorder (TMJ/D):

(1) Doppler ultrasound;

(2) Electroencephalogram (EEG);

(3) Needle electromyography (needle EMG);

(4) Sonography;

(5) Thermograms/thermographs; or

(6) Videofluoroscopy.

2. **Extended Medical Expense Benefits**

The exclusions that apply to Personal Injury Protection also apply to Extended Medical Expense Benefits, except Exclusion **c.**, which does not apply to Extended Medical Expense Benefits. In addition, the following exclusions are added to Extended Medical Expense Benefits:

a. We will not pay Extended Medical Expense Benefits for "bodily injury" to any person, other than the "named insured" or any "family member" or a resident of New Jersey, if the "accident" occurs outside of New Jersey.

b. We will not pay Extended Medical Expense Benefits for "bodily injury" to any "insured" who is entitled to benefits for the "bodily injury" under:

(1) Personal Injury Protection Coverage; or

(2) Any:

(a) Workers' compensation law; or

(b) Medicare provided under federal law.

c. We will not pay Extended Medical Expense Benefits for "bodily injury" to any "insured" who would be entitled to benefits for the "bodily injury" under Personal Injury Protection Coverage, except for the application of a:

(1) Deductible;

(2) Copayment; or

(3) Medical fee schedule promulgated by the New Jersey Department of Banking and Insurance.

© Insurance Services Office, Inc., 2016

### 3. Pedestrian Personal Injury Protection

The exclusions that apply to Personal Injury Protection also apply to Pedestrian Personal Injury Protection, except Exclusions **b.** and **c.**, which do not apply to Pedestrian Personal Injury Protection Coverage.

### C. Limit Of Insurance

1. Any amount payable by us as Personal Injury Protection benefits for "bodily injury" shall be reduced by:

   a. All amounts paid, payable or required to be provided under any workers' compensation or employees' temporary disability law.

   b. Medicare provided under federal law.

   c. Benefits actually collected that are provided under federal law to active and retired military personnel.

2. Any amount payable by us as medical expense benefits will be limited by medical fee schedules, as promulgated by the New Jersey Department of Banking and Insurance for specific injuries or services, or the usual, customary and reasonable fee, whichever is less.

3. Any amounts payable for medical expense benefits as the result of any one "accident" shall be:

   a. Reduced by the applicable deductible indicated in the Schedule or in the Declarations; and

   b. Subject to the copayment of 20% for the amount between the applicable deductible and $5,000.

4. The applicable limit of income continuation benefits applies separately to each full regular and customary work week of an "eligible injured person". If this disability from work or employment consists of or includes only a part of such a week, we shall be liable for only that proportion of such weekly limit that the number of days lost from work or employment during the partial week bears to the number of days in his or her full work week.

5. If the Schedule or Declarations indicates that the "named insured" has elected the Medical Expense Benefits-As-Secondary Option, the following provisions apply to medical expense benefits:

   a. **Priority Of Benefits**

      (1) The health benefits plans under which the "named insured" and any "family member" are insured shall provide primary coverage for "allowable expenses" incurred by the "named insured" and any "family member" before any medical expense benefits are paid by us.

      (2) This insurance shall provide secondary coverage for medical expense benefits for "allowable expenses", which remained uncovered.

      (3) The total benefits paid by the health benefits plans and this insurance shall not exceed the total amount of "allowable expenses".

   b. **Determination Of Medical Expense Benefits Payable**

      (1) To calculate the amount of "actual benefits" to be paid by us, we will first determine the amount of "eligible expenses" which would have been paid by us, after application of the deductible and copayment indicated in the Schedule or Declarations, had the "named insured" not elected the Medical Expense Benefits-As-Secondary Coverage Option.

 © Insurance Services Office, Inc., 2016

(2) If the remaining "allowable expenses" are:

 (a) Less than the benefits calculated in Paragraph (1) above, we will pay "actual benefits" equal to the remaining "allowable expenses", without reducing the remaining "allowable expenses" by the deductible or copayment.

 (b) Greater than the benefits calculated in Paragraph (1) above, we will pay "actual benefits" equal to the benefits calculated in Paragraph **1.** above, without reducing the remaining "allowable expenses" by the deductible or copayment.

(3) We will not reduce the "actual benefits" determined in Paragraph **2.**:

 (a) By any deductibles or copayments of the health benefits plans which have provided primary coverage for medical expense benefits; or

 (b) For any "allowable expense" remaining uncovered which otherwise would not be an "eligible expense" under Personal Injury Protection Coverage, except as set forth in Paragraph **(4)** below.

(4) In determining remaining uncovered "allowable expenses", we shall not consider any amount for items of expense which exceed the dollar or percent amounts recognized by the medical fee schedules promulgated by the New Jersey Department of Banking and Insurance.

(5) The total amount of medical expense benefits for the "named insured" or any "family member" per "accident" shall not exceed the maximum amount payable for medical expense benefits under this Policy.

c. **Health Benefits Plan Ineligibility**

(1) If, after the "named insured" has elected the Medical Expense Benefits-As-Secondary Coverage Option, it is determined that the "named insured" or any "family member" did not have a health benefits plan in effect at the time an "accident" occurred which resulted in "bodily injury" to the "named insured" or any "family member", medical expense benefits shall be provided to the "named insured" or any "family member", subject to the following:

 (a) Only Paragraph **1.** of the Limit Of Insurance provision will apply with respect to medical expense benefits.

 (b) Any amount payable for medical expense benefits for the "named insured" and any "family member" as a result of any one "accident" shall:

 (1) Be reduced by a deductible equal to the sum of $750 plus the applicable deductible indicated in the Schedule or in the Declarations; and

 (2) Be subject to a copayment of 20% for amounts less than $5,000 after the deductible has been applied.

 (3) Be determined:

 (i) By the medical fee schedules promulgated by the New Jersey Department of Insurance; or

 (ii) By us, on a reasonable basis, considering the medical fee schedules for similar services or equipment in the region where the service or equipment was provided, if an item of expense is not included on the medical fee schedules.

(4) Not exceed the maximum amount payable for medical expense benefits under this Policy.

(2) All items of medical expense incurred by the "named insured" or any "family member" for the treatment of "bodily injury" shall be "eligible expenses" to the extent the treatment or procedure from which the expenses arose:

(a) Is recognized on the medical fee schedules promulgated by the New Jersey Department of Banking and Insurance; or

(b) Are reasonable expenses in accordance with Section 4 of the New Jersey Reparation Reform Act.

(3) We shall be entitled to recover the difference between:

(a) The reduced premium paid under this Policy for the Medical Expense Benefits-As-Secondary Option; and

(b) The premium which would have been paid under this Policy had the "named insured" not elected such option.

We will not provide any premium reduction for the Medical Expense Benefits-As-Secondary Option for the remainder of the policy period.

6. The Limit Of Insurance shown in the Schedule or Declarations for weekly income continuation benefits shall be prorated for any period of "bodily injury" disability less than one week.

D. Changes In Conditions

1. The **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are amended by the addition of the following:

a. If an "eligible injured person", "insured person" or the legal representative or survivors of either institutes legal action to recover damages for injury against a person or organization who is or may be liable in tort therefor, he or she must promptly give us a copy of the summons and complaint or other process served in connection with the legal action.

b. The "eligible injured person", "insured person" or someone on their behalf must promptly give us written proof of claim including:

(1) Full particulars of the nature and extent of the "bodily injury"; and

(2) Such other information that will help us determine the amount due and payable.

c. The "eligible injured person" or "insured person" must submit to physical examination by physicians when and as often as we reasonably require and a copy of the medical report will be forwarded to such "eligible injured person" or "insured person" if requested.

d. In the event of "accident", claim, "suit" or "loss", if the notice, proof of claim or other reasonably obtainable information regarding the accident is received by us more than 30 days after the accident, we may impose an additional medical expense benefits copayment in accordance with New Jersey law or regulation. This copayment shall be in addition to:

(1) Any medical expense benefits deductible or copayment; or

(2) Any penalty imposed in accordance with our Decision Point Review Plan.

2. The **Policy Period, Coverage Territory** Condition for **Personal Injury Protection** and **Extended Medical Expense Benefits** is replaced by the following:

This Coverage Part applies only to "accidents" which occur during the policy period:

a. Anywhere in the world.

b. For pedestrian Personal Injury Protection Coverage, the coverage territory is New Jersey.

3. For Extended Medical Expense Benefits, the **Two Or More Coverage Forms Or Policies Issued By Us** Condition does not apply. However, no one will be entitled to receive duplicate payments for the same elements of "loss".

© Insurance Services Office, Inc., 2016

4. The following **Reimbursement And Trust** Condition is added:

Subject to any applicable limitations set forth in the New Jersey Automobile Reparation Reform Act, if we make any payment to any "eligible injured person" or "insured person" under this coverage and that person recovers from another party, he or she shall hold the proceeds in trust for us and pay us back the amount we have paid. We will have a lien against such payment, and may give notice of the lien to the person or organization causing "bodily injury", his or her agent or insurer or a court having jurisdiction in the matter.

5. The following **Payment Of Personal Injury Protection Benefits** Conditions are added:

a. Medical expense benefits and essential services benefits may be paid at our option to the "eligible injured person", "insured person" or the person or organization furnishing the products or services for which such benefits are due. These benefits shall not be assignable except to providers of service benefits. Any such assignment is not enforceable unless the provider of service benefits agrees to be subject to the requirements of our Decision Point Review Plan. In the event of the death of an "eligible injured person" or "insured person" any amounts payable, but unpaid prior to death, for medical expense benefits are payable to the "eligible injured person's" or "insured person's" estate.

b. Benefits payable under Paragraph **A.1.d.(1)** of the description of death benefits are payable to the "eligible injured person's" surviving spouse, or if there is no surviving spouse, to his or her surviving children, or if there is not a surviving spouse or any surviving children, to the "eligible injured person's" estate.

c. Benefits payable under Paragraph **A.1.d.(2)** of the description of death benefits are payable to the person who has incurred the expense of providing essential services.

d. Funeral expense benefits are payable to the "eligible injured person's" or "insured person's" estate.

6. The following **Deletion Of Benefits Other Than Medical Expenses Option** Condition is added:

When the Schedule or the Declarations indicates that the Deletion Of Benefits Other Than Medical Expenses Option applies, we will pay Personal Injury Protection Benefits consisting only of medical expense benefits for the "named insured" and "family members".

7. The following **Employee Benefits Reimbursement** Condition is added:

If the "eligible injured person" or "insured person" fails to apply for workers' compensation benefits or employees' temporary disability benefits for which that person is eligible, we may immediately apply to the provider of these benefits for reimbursement of any Personal Injury Protection Benefits that we have paid.

8. The following **Proof Of Health Benefits Plan Coverage** Condition is added:

If the "named insured" has elected the Medical Expense Benefits-As-Secondary Option, the "named insured" shall provide proof that the "named insured" and "family members" are insured by health insurance coverage or benefits in a manner and to an extent approved by the New Jersey Department of Banking and Insurance.

9. The following **Special Requirements For Medical Expenses** Conditions are added:

a. **Care Paths For "Identified Injuries" (Medical Protocols)**

(1) The New Jersey Department of Banking and Insurance has established by regulation the standard courses of medically necessary diagnosis and treatment for "identified injuries". These courses of diagnosis and treatments are known as care paths.

The care paths do not apply to treatment administered during "emergency care".

(2) Upon notification to us of a "bodily injury" covered under this Policy, we will advise the "insured" of the care path requirements established by the New Jersey Department of Banking and Insurance.

(3) Where the care paths indicate a decision point, further treatment or the administration of a diagnostic test is subject to our Decision Point Review Plan.

A decision point means the juncture in treatment where a determination must be made about the continuation or choice of further treatment of an "identified injury".

## b. Coverage For "Diagnostic Tests"

(1) In addition to the care path requirements for an "identified injury", the administration of any of the following "diagnostic tests" is also subject to the requirements of our Decision Point Review Plan:

  (a) Brain audio evoked potential (BAEP);

  (b) Brain evoked potential (BEP);

  (c) Computer assisted tomographic studies (CT, CAT Scan);

  (d) Dynatron/cyber station/cybex;

  (e) H-reflex Study;

  (f) Magnetic resonance imaging (MRI);

  (g) Nerve conduction velocity (NCV);

  (h) Somasensory evoked potential (SSEP);

  (i) Sonogram/ultrasound;

  (j) Visual evoked potential (VEP);

  (k) Any of the following "diagnostic tests" when not otherwise excluded under Exclusion **j.**:

    (i) Brain mapping;

    (ii) Doppler ultrasound;

    (iii) Electroencephalogram (EEG);

    (iv) Needle electromyography (needle EMG);

    (v) Sonography;

    (vi) Thermography/thermograms;

    (vii) Videofluoroscopy; or

  (l) Any other "diagnostic test" that is subject to the requirements of our Decision Point Review Plan by New Jersey law or regulation.

(2) The "diagnostic tests" listed under Paragraph **(1)** must be administered in accordance with New Jersey Department of Banking and Insurance regulations, which set forth the requirements for the use of "diagnostic tests" in evaluating injuries sustained in "auto" "accidents".

However, those requirements do not apply to "diagnostic tests" administered during "emergency care".

(3) We will pay for other "diagnostic tests" that are:

  (a) Not subject to our Decision Point Review Plan; and

  (b) Not specifically excluded under Exclusion **j.**; only if administered in accordance with the criteria for medical expenses as provided in this endorsement.

## c. Decision Point Review Plan

(1) Coverage for certain medical expenses under this endorsement is subject to our Decision Point Review Plan, which provides appropriate notice and procedural requirements that must be adhered to in accordance with New Jersey law or regulation. We will provide a copy of this plan upon request, or in the event of any claim for medical expenses under this coverage.

(2) Our Decision Point Review Plan includes the following minimum requirements as prescribed by New Jersey law or regulation:

  (a) The requirements of the Decision Point Review Plan only apply after the tenth day following the "accident".

  (b) We must be provided prior notice as indicated in our plan, with appropriate "clinically supported" findings, that additional treatment for an "identified injury", the administration of a "diagnostic test" listed under Paragraph **(1)** or the use of durable medical equipment is required.

    The notice and "clinically supported" findings may include a comprehensive treatment plan for additional treatment.

(3) Once we receive such notice with the appropriate "clinically supported" findings, we will, in accordance with our plan:

  (a) Promptly review the notice and supporting materials; and

  (b) If required as part of our review, request any additional medical records or schedule a physical examination.

© Insurance Services Office, Inc., 2016

**(4)** We will then determine and notify the "eligible injured person" or the "insured person" whether we will provide coverage for the additional treatment, "diagnostic test" or use of durable medical equipment as indicated in our plan and within the applicable three business day requirements specified in New Jersey Department of Banking and Insurance regulations.

Any determination we make will be based on the determination of a physician. If the physician prepares a written report concerning the examination we have required, such report will be made available to the "eligible injured person" upon request.

**(5)** Any physical examination of an "eligible injured person" or "insured person" scheduled by us will be conducted in accordance with our plan.

**(6)** We may deny reimbursement of further treatment, testing or use of durable medical equipment for repeated unexcused failure of an "eligible injured person" or "insured person" to appear for a physical scheduled examination required by us in accordance with our plan.

**(7)** A penalty will be imposed in accordance with our plan if:

**(a)** We do not receive proper notice and "clinically supported" findings; or

**(b)** Any "eligible injured person" or "insured person" fails to use a network in accordance with N.J.A.C. 11:3-4.8.

**(c)** We do not receive proper notice for treatment, "diagnostic tests" or durable medical equipment in accordance with the requirements of our Decision Point Review Plan.

However, no penalty will be imposed where the proper notice or findings were received by us and we thereafter failed to act in accordance with our plan to request further information, modify or deny reimbursement of further treatment, "diagnostic tests" or the use of durable medical equipment with respect to that notice or those findings.

**d. Dispute Resolution**

If we and any person seeking Personal Injury Protection Coverage do not agree as to the recovery of Personal Injury Protection Coverage under this endorsement, then the matter may be submitted to dispute resolution, on the initiative of any party to the dispute, in accordance with N.J.A.C. 11:3-5.6.

However, prior to submitting such matter to dispute resolution, providers who are assigned service benefits by an "eligible injured person" or "insured person", or have a power of attorney from such person, shall be subject to our internal appeals process in accordance with New Jersey law or regulation. Any request for dispute resolution may include a request for review by a medical review organization.

**10.** The following condition is added for **Personal Injury Protection** and **Pedestrian Personal Injury Protection:**

**Coordination And Nonduplication**

**a.** Regardless of the number of "autos" insured for basic personal injury protection coverage pursuant to Section 4 of the New Jersey Automobile Reparation Reform Act or the number of insurers or policies providing such coverage, there shall be no duplication of payment of basic Personal Injury Protection Benefits and the aggregate maximum amount payable under this and all applicable policies with respect to "bodily injury" to any one person as the result of any one "accident" shall not exceed the applicable amounts or limits specified in Section 4 of said Act.

**b.** If an "eligible injured person" under this coverage is also an "eligible injured person" under other complying policies, the insurer paying benefits to such person shall be entitled to recover from each of the other insurers an equitable pro rata share of the benefits paid. The pro rata share is the proportion that the insurer's liability bears to the total of all applicable limits. Complying Policy means a policy of automobile liability insurance maintained pursuant to the requirements of Section 3 of the New Jersey Automobile Reparation Reform Act and providing basic Personal Injury Protection Coverage as approved by the Commissioner of Insurance.

© Insurance Services Office, Inc., 2016

11. The following condition is added for **Personal Injury Protection** and **Extended Medical Expense Benefits:**

**Medical Payments Deletion**

In consideration of the coverage provided for Personal Injury Protection and Extended Medical Expense Benefits in Paragraphs **A.1.** and **A.2.** of this endorsement, and the adjustment of applicable rates because of "bodily injury" to an "eligible injured person", any auto medical payments coverage provided under the Coverage Part is deleted with respect to an "auto" which is a covered "auto".

**E. Definitions**

The **Definitions** section is amended as follows:

1. The definition of "bodily injury" is replaced by the following:

"Bodily injury" means bodily harm, sickness or disease, including an "identified injury" or death that results.

2. The following definitions are added for **Personal Injury Protection, Extended Medical Expense Benefits** and **Pedestrian Personal Injury Protection:**

   a. "Actual benefits" means those benefits determined to be payable for "allowable expenses".

   b. "Allowable expense" means a medically necessary, reasonable and customary item of expense covered as benefits by the "named insured's" or "family member's" health benefits plan or Personal Injury Protection Benefits as an "eligible expense", at least in part. When benefits provided are in the form of services, the reasonable monetary value of each such service shall be considered as both an "allowable expense" and a paid benefit.

   c. "Clinically supported" means that a "health care provider", prior to selecting, performing or ordering the administration of a treatment or "diagnostic test", has:

      (1) Physically examined the "eligible injured person" or "insured person" to ensure that the proper medical indications exist to justify ordering the treatment or test;

      (2) Made an assessment of any current and/or historical subjective complaints, observations, objective findings, neurologic indications, and physical tests;

      (3) Considered any and all previously performed tests that relate to the injury and the results and which are relevant to the proposed treatment or test; and

      (4) Recorded and documented these observations, positive and negative findings and conclusions on the "insureds" medical records.

   d. "Diagnostic test(s)" means a medical service or procedure utilizing any means other than bioanalysis, intended to assist in establishing a:

      (1) Medical;

      (2) Dental;

      (3) Physical therapy;

      (4) Chiropractic; or

      (5) Psychological diagnosis;

      for the purpose of recommending or developing a course of treatment for the tested patient to be implemented by the treating practitioner or by the consultant.

   e. "Eligible expense" means:

      (1) In the case of health benefits plans, that portion of the medical expenses incurred for the treatment of "bodily injury" which is covered under the terms and conditions of the plan, without application of the deductible(s) and copayment(s), if any.

      (2) In the case of Personal Injury Protection Benefits, that portion of the medical expenses incurred for the treatment of "bodily injury" which, without considering any deductible and copayment, shall not exceed:

         (a) The percent or dollar amounts specified on the medical fee schedules, or the actual billed expense, whichever is less; or

         (b) The reasonable amount, as determined by us, considering the medical fee schedules for similar services or equipment in the region where the service or equipment was provided, when an incurred medical expense is not included on the medical fee schedules.

© Insurance Services Office, Inc., 2016 CA 22 30 11 16

f. "Emergency care" means all treatment of a "bodily injury" which manifests itself by acute symptoms of sufficient severity such that absence of immediate attention could reasonably be expected to result in death, serious impairment to bodily functions or serious dysfunction to a bodily organ or part. Such emergency care shall include all medically necessary care immediately following an "accident", including but not limited to, immediate prehospitalization care, transportation to a hospital or trauma center, emergency room care, surgery, critical and acute care. Emergency care extends during the period of initial hospitalization until the patient is discharged from acute care by the attending physician. Emergency care shall be presumed when medical care is initiated at a hospital within 120 hours of the "accident".

g. "Family member" means a person related to the "named insured" by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the "named insured".

h. "Health care provider" means those persons licensed or certified to perform health care treatment or services compensable as medical expenses and shall include, but not be limited to:

(1) Hospital or health care facilities that are maintained by a state or any of its political subdivisions or licensed by the Department of Health and Senior Services;

(2) Other hospitals or health care facilities designated by the Department of Health and Senior Services to provide health care services, or other facilities, including facilities for radiology and diagnostic testing, free-standing emergency clinics or offices, and private treatment centers;

(3) A nonprofit voluntary visiting nurse organization providing health care services other than in a hospital;

(4) Hospitals or other health care facilities or treatment centers located in other states or nations;

(5) Physicians licensed to practice medicine and surgery;

(6) Licensed chiropractors, dentists, optometrists, pharmacists, chiropodists (podiatrists), psychologists, physical therapists, health maintenance organizations, orthotists and prosthetists, professional nurses, occupational therapists, speech language pathologists, audiologists, physician assistants, physical therapy assistants and occupational therapy assistants;

(7) Registered bioanalytical laboratories;

(8) Certified nurse-midwives and nurse practitioners/clinical nurse-specialists; or

(9) Providers of other health care services or supplies including durable medical goods.

i. "Identified injury" means the following "bodily injuries" for which the New Jersey Department of Banking and Insurance has established standard courses of medically necessary diagnosis and treatment:

(1) Cervical Spine: Soft Tissue Injury;

(2) Cervical Spine: Herniated Disc/Radiculopathy;

(3) Thoracic Spine: Soft Tissue Injury;

(4) Thoracic Spine: Herniated Disc/ Radiculopathy;

(5) Lumbar-Sacral Spine: Soft Tissue Injury;

(6) Lumbar-Sacral Spine: Herniated Disc/Radiculopathy; and

(7) Any other "bodily injury" for which the New Jersey Department of Banking and Insurance has established standard courses of appropriate diagnosis and treatment.

j. "Income" means salary, wages, tips, commissions, fees and other earnings derived from work or employment.

k. "Income producer" means a person who, at the time of the "accident", was in an occupational status, earning or producing income.

l. "Named insured" means the person or organization named in Item **1** of the Declarations and, if an individual, includes his or her spouse if the spouse is a resident of the household of the "named insured", except that if the spouse ceases to be a resident of the same household, the spouse shall be a "named insured" for the full term of the Policy in effect at the time of cessation of residency. If the covered "auto" is owned by a farm family copartnership or corporation, the term "named insured" also includes the head of the household of each family designated in the Policy as having a working interest in the farm.

m. "Occupying" means in, upon, getting in, on, out or off.

n. "Pedestrian" means any person who is not occupying, using, entering into, or alighting from a vehicle propelled by other than muscular power and designed primarily for use on highways, rails and tracks.

o. "Private passenger auto" means a self-propelled vehicle designed for use principally on public roads and which is one of the following types:

(1) A private passenger or station wagon type auto;

(2) A van, a pickup or panel truck or delivery sedan; or

(3) A utility auto designed for personal use as a camper or motor home or for family recreational purposes.

A "private passenger auto" does not include:

(a) A motorcycle;

(b) An auto used as a public or livery conveyance for passengers including, but not limited to, any period of time an auto is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the auto;

(c) A pickup or panel truck, delivery sedan or utility auto customarily used in the occupation, profession or business of an "insured" other than farming or ranching; or

(d) A utility auto customarily used for the transportation of passengers other than members of the user's family or their guests.

p. "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

3. The following definition is added to the **Definitions** section for **Personal Injury Protection:**

"Eligible injured person" means:

a. The "named insured" and, if the "named insured" is an individual, any "family member", if the "named insured" or the "family member" sustains "bodily injury":

(1) As a result of any "accident" while occupying, using, entering into or alighting from a "private passenger auto"; or

(2) While a "pedestrian", caused by a "private passenger auto" or by an object propelled by or from a "private passenger auto".

b. Any other person who sustains "bodily injury":

(1) While, with your permission, that person is occupying, using, entering into or alighting from the covered "auto"; or

(2) While a "pedestrian", caused by the covered "auto" or as a result of being struck by an object propelled by or from the covered "auto".

4. The following is added to the **Definitions** section for **Extended Medical Expense Benefits:**

a. "Highway vehicle" means a land motor vehicle or trailer other than:

(1) A "private passenger auto";

(2) A farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads;

(3) A vehicle operated on rails or crawler treads; or

(4) A vehicle while located for use as a residence or premises.

b. "Insured person" means:

(1) The "named insured" and, if the "named insured" is an individual, any "family member" of the "named insured", if the "named insured" or "family member" sustains "bodily injury":

(a) While occupying, using, entering into or alighting from a "highway vehicle"; or

© Insurance Services Office, Inc., 2016

CA 22 30 11 16

(b) While a "pedestrian", caused by a "highway vehicle".

(2) Any other person who sustains "bodily injury" while occupying a "highway vehicle" (other than a motorcycle or a vehicle while being used as a public or livery conveyance including, but not limited to, any period of time a vehicle is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle) if such "highway vehicle" is being operated by the "named insured" and, if the "named insured" is an individual, a "family member", or any other person using such "highway vehicle" with the permission of the "named insured"; or

(3) Any other person who sustains "bodily injury" occupying a covered "auto" if the covered "auto" is being operated by the "named insured" and, if the "named insured" is an individual, a "family member", or any other person using the covered "auto" with the permission of the "named insured".

5. The following is added to the **Definitions** section for **Pedestrian Personal Injury Protection:**

a. "Eligible injured person" means:

A person who sustains "bodily injury" while a "pedestrian", caused by an "insured motor vehicle" or as a result of being struck by an object propelled by or from the "insured motor vehicle".

b. "Insured motor vehicle" means a self-propelled motor vehicle designed for use principally on public roads, which is not a "private passenger auto" and to which the liability coverage of this Coverage Form applies.

## HIRED AUTO ENDORSEMENT

### PCA-99-26

**This Endorsement changes the terms and conditions of the Policy issued. Please read it carefully!**

The definition for Auto is amended as follows:

"Auto" means a land motorized vehicle, trailer, or semi-trailer designed for travel on public roads, including any attached machinery or equipment whose exclusive use and control has been temporarily given to another for consideration (money, trade, etc.) or has been borrowed, except those borrowed from employees, partners, or family members. Auto does not include Mobile Equipment.

## NON-OWNED AUTO ENDORSEMENT

### PCA-99-10

**This Endorsement changes the terms and conditions of the Policy issued.  Please read it carefully!**

Subject to all of the terms and conditions of the Policy, coverage is extended to include liability arising from the Insured s operation of a Non-Owned Auto.  Coverage under this endorsement is limited to Non-Owned Autos strictly while being operated for those activities and operations listed on the Declarations or by Endorsement to the Policy.  Furthermore, and as a condition precedent to coverage, the operator of the Non-Owned Auto must be specifically scheduled as a  Non-Owned Auto Operator.

#### Definitions

1.   Non-Owned Auto  means an Auto that the Insured does not own, lease, hire, or rent, and which is operated by a Non-Owned Auto Operator.

2.   Non-Owned Auto Operator  means an Insured that is specifically scheduled and identified in the Policy as a Non-Owned Auto Operator and who is involved in an Accident while operating a Non-Owned Auto for business use.



**P.O. Box 4439**
**Sandy, UT 84091-4439**
**UNDERWRITERS**   **Phone: (877) 243-8181**
**DIRECT ACCESS** **Fax:** **(877) 452-6910**

**Insured Name:  Freightway Logistics LLC**

## Driver Schedule History

| Driver No. | Name | Date of Birth | License Number | State | Notes | Effective Date | Deleted Date |
|---|---|---|---|---|---|---|---|
| 1 | Hector Paulino | | | NJ | | 12/14/2017 | |
| 2 | Davinder Singh | | | NJ | | 12/14/2017 | |
| 3 | Oscar Urena | | | NJ | | 12/14/2017 | |
| 4 | Gilberto Peralta | | | NJ | | 12/14/2017 | |
| 5 | Edwin Cuartas | | | NJ | | 12/14/2017 | |
| 6 | FRAULIO CORRO | | | NJ | | 12/14/2017 | |
| 7 | FRANCISCO TAMAYO | | | NJ | | 12/14/2017 | |
| 8 | JIMMY RUIZ | | | NJ | | 12/14/2017 | |
| 9 | YOVANNY CASTRO | | | NJ | | 12/14/2017 | |
| 10 | VERNON GOURDET | | | NJ | | 12/14/2017 | |

\*  Compiled from information furnished without audit.



**P.O. Box 4439**
**Sandy, UT 84091-4439**
**Phone: (877) 243-8181**
**Fax:      (877) 452-6910**

**Insured Name:  Freightway Logistics LLC**

# Vehicle Schedule History

| Veh # | Year | Make | Body Type | VIN Number | Medallion/ Fleet No. | Radius | Coverage Type | Liability | Stated Value | Effective Date | Deleted Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2009 | Volvo | Tractor | 4V4NC9TH39N280083 | | Unlimited | | ✔ | $0.00 | 12/14/2017 | |
| 2 | 2002 | Kenworth | Tractor | 1XKTD49X32J884798 | | Unlimited | | ✔ | $0.00 | 12/14/2017 | |
| 3 | 2000 | Freightliner | Tractor | 1FUPCDZB0YLF06046 | | Unlimited | | ✔ | $0.00 | 12/14/2017 | |
| 4 | 2011 | Freightliner | Tractor | 1FJUJGLDR2BSAS049 | | Unlimited | | ✔ | $0.00 | 12/14/2017 | |
| 5 | 2000 | Peterbilt | Tractor | 1XP5DB9X5YN53069 | | Unlimited | | ✔ | $0.00 | 12/14/2017 | |
| 6 | 2013 | Kenworth | Tractor | 1XKAD49x6dj319715 | | Unlimited | | ✔ | $0.00 | 12/14/2017 | |
| 7 | 2000 | Freightliner | Tractor | 1FUYDXYB6YLF70614 | | Unlimited | | ✔ | $0.00 | 12/14/2017 | |
| 8 | 2013 | Kenworth | Tractor | 1XKAD49X7DJ315981 | | Unlimited | | ✔ | $0.00 | 12/14/2017 | |
| 9 | 2005 | Volvo | Tractor | EV4NC9TJ35N394355 | | Unlimited | | ✔ | $0.00 | 12/14/2017 | |
| 10 | 2012 | Kenworth | Tractor | 1XKAD49x4cj308727 | | Unlimited | | ✔ | $0.00 | 12/14/2017 | |
| 11 | 2017 | Non-Owned | Trailer | | | Unlimited | | ✔ | $40,000.00 | 12/14/2018 | |
| 12 | 2017 | Non-Owned | Trailer | | | Unlimited | | ✔ | $40,000.00 | 12/14/2017 | |
| 13 | 2017 | Non-Owned | Trailer | | | Unlimited | | ✔ | $40,000.00 | 12/14/2017 | |
| 14 | 2017 | Non-Owned | Trailer | | | Unlimited | | ✔ | $40,000.00 | 12/24/2017 | |
| 15 | 2017 | Non-Owned | Trailer | | | Unlimited | | ✔ | $40,000.00 | 12/24/2018 | |
| 16 | 2017 | Non-Owned | Trailer | | | Unlimited | | ✔ | $40,000.00 | 12/14/2017 | |
| 17 | 2017 | Non-Owned | Trailer | | | Unlimited | | ✔ | $40,000.00 | 12/14/2018 | |
| 18 | 2017 | Non-Owned | Trailer | | | Unlimited | | ✔ | $40,000.00 | 12/14/2017 | |
| 19 | 2017 | Non-Owned | Trailer | | | Unlimited | | ✔ | $40,000.00 | 12/14/2017 | |
| 20 | 2017 | Non-Owned | Trailer | | | Unlimited | | ✔ | $40,000.00 | 12/14/2017 | |
| 21 | 2017 | Hired | Auto | | | Unlimited | | ✔ | $0.00 | 12/14/2017 | |
| 22 | 2017 | Non-Owned | Auto | | | Unlimited | | ✔ | $0.00 | 12/14/2017 | |